IN THE MATTER OF: THE APPEAL OF WESTINGHOUSE ELECTRIC CORPORATION FROM THE APPRAISAL OF CERTAIN OF ITS REAL PROPERTY BY THE MECKLENBURG COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1983

No. 8810PTC720

(Filed 16 May 1989)

1. Taxation § 25.7— ad valorem taxes—valuation of turbine facility

Competent, material and substantial evidence supported the Property Tax Commission's conclusion that a county's calculation of the reproduction cost new of taxpayer's facility for manufacturing and refurbishing turbines was essentially

**IN RE APPEAL OF WESTINGHOUSE ELECTRIC CORP.**

[93 N.C. App. 710 (1989)]

correct and was determined through the use of all three traditional approaches to valuation of improvements to realty for ad valorem tax purposes. Even if the Commission improperly used an expert witness's reproduction cost new rather than the county's, the method used did not increase the taxpayer's assessment and was not prejudicial to the taxpayer where the county's reproduction cost figure was slightly higher than that of the witness.

2. **Taxation § 25.7— ad valorem taxes—valuation of improvements—residual depreciation method**

In valuing a taxpayer's improvements to realty for ad valorem tax purposes, the Property Tax Commission did not err in using the residual method in calculating depreciation by which the Commission first subtracted the 20% physical depreciation from reproduction cost new and then subtracted the 40% depreciation for functional and economic obsolescence from the resulting subtotal rather than subtracting both types of depreciation from reproduction cost new.

APPEAL by Westinghouse Electric Corporation from order of the North Carolina Property Tax Commission. Order entered 12 January 1988 in WAKE County. Heard in the Court of Appeals 23 February 1989.

*Weinstein & Sturges, P.A., by John J. Doyle, Jr. and L. Holmes Eleazer, Jr., for appellant Westinghouse Electric Corporation.*

*Ruff, Bond, Cobb, Wade & McNair, by Hamlin L. Wade, for appellee Mecklenburg County.*

JOHNSON, Judge.

This appeal concerns the tax valuation of property owned by Westinghouse Electric Corporation (Taxpayer) in Mecklenburg County. The property at issue was originally built in 1968 by Taxpayer for manufacturing and refurbishing nuclear turbines. Since the decline in the demand for nuclear turbines the facility has shifted to manufacturing and refurbishing fossil fueled turbines, although work is still done on nuclear components.

In 1983, Taxpayer's plant was appraised for ad valorem tax purposes at $41,218,760 by Mecklenburg County (County). Taxpayer appealed this valuation to the Mecklenburg County Board of Equaliza-

tion and Review (Board) which reduced the appraisal to $35,000,000. Thereafter, Taxpayer appealed the Board's decision to the North Carolina Property Tax Commission (Commission). After several days of hearings on the matter, the Commission rendered its final decision on 12 January 1988 declaring the value of Taxpayer's property to be $29,511,160. On 11 February, Taxpayer filed notice of appeal to this Court. On 5 July, the Commission modified its final order as to certain terminology used in the final order. By order of this Court, on 24 August, the modification was added to the record on appeal.

By this appeal, Westinghouse contends that the Commission erred (1) in utilizing the cost approach as the basis for its valuation of Taxpayer's property, and (2) in computing the total depreciated value of the improvements to Taxpayer's property.

Before turning to the merits of Taxpayer's first Assignment of Error, we take note of the substantive law governing the appraisal of property in North Carolina as set forth in G.S. sec. 105-271 et seq., known as the Machinery Act. G.S. sec. 105-283 requires that all property be appraised at its "true value in money," or market value as far as practicable. *In re Appeal of Bosley*, 29 N.C. App. 468, 224 S.E. 2d 686, *disc. rev. denied*, 290 N.C. 551, 226 S.E. 2d 509 (1976). G.S. sec. 105-284 (effective until 1 January 1987) mandates that taxes shall be levied uniformly on assessments. Specific factors which must be considered in appraising the value of both land and improvements thereon are stated in G.S. sec. 105-317(a) (effective until 1 January 1987). Regarding improvements to real property, G.S. sec. 105-317(a)(2) states that it is the duty of the appraiser:

> In determining the true value of a building or other improvement, to consider at least its location; type of construction; age; replacement cost; cost; adaptability for residence, commercial, industrial, or other uses; past income; probable future income; and *any other factors that may affect its value.* (Emphasis added.)

The weight to be accorded relevant evidence is a matter for the factfinder, which is the Commission. *In re Appeal of Greensboro Office Partnership*, 72 N.C. App. 635, 325 S.E. 2d 24, *disc. rev. denied*, 313 N.C. 601, 330 S.E. 2d 610 (1985).

Our standard on review is to determine whether in light of the "whole record" on appeal, the Commission's decision is supported

by competent, material and substantial evidence. G.S. sec. 105-345.2(b) and (c). Further, there is a presumption that ad valorem tax assessments are correct. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E. 2d 752 (1975) (citations omitted). In order to rebut this presumption, it is not sufficient for the taxpayer to prove that the method used by the tax assessor was incorrect, he must also show that the result reached is *substantially* greater than the true value in money of the property assessed. *Id.*

Essentially, Taxpayer contends that the Commission failed, in its 1983 assessment, to give proper consideration to all methods and factors impacting upon the true value or "market value" of the property as required by G.S. sec. 105-283 (1985) and -317(a) (effective until 1 January 1987).

At the hearing of this matter, the Commission heard testimony from six experts in the field of property assessment, three testifying on behalf of the Taxpayer and three for the County. They represented different viewpoints as to which methodology should be employed in appraising Taxpayer's property. Although the testimony of Mr. McShane, Taxpayer's in-house tax manager, has apparently been removed from the transcript of the hearing, we have gleaned his approach through review of his written appraisal, contained in the County's exhibits on appeal.

Two of the County's experts, both also employees of the County, testified in detail about the computer assisted mass appraisal system utilized by the County in appraising Taxpayer's property. Mr. Lane Helms, Real Estate Appraiser Supervisor for the County, explained that there are three methods used in revaluation of a property: market value or comparable sales, cost, and income. The market approach is heavily relied upon in determining land values. For improvements to real property the County uses a complex approach involving all three methods. Sales data concerning various types of improvements are collected from different sources over a period of about two years. This information is then used to create a system of "points" or values for the various structural components of each type of improvement. This system is utilized in various computer programs which incorporate sales, income, and cost data to arrive at a base value for a specific property. Finally, adjustment is made for depreciation of the property.

Taxpayer's experts each used somewhat varying appraisal techniques to arrive at their final estimates of value for the prop-

erty. However, they all reached similar values, ranging from $20,000,000 to $21,150,000.

The County presented one other. expert in the field of real estate appraisal, a Mr. Flanagan. He employed a cost approach based on objective data supplied by the Taxpayer in arriving at his final valuation of $32,760,000. Mr. Flanagan found the market approach unworkable because, in his professional opinion, no bona fide comparable sales existed on 1 January 1983, the date as of which the witness was to determine the property's fair market value.

In rendering its final decision in this matter, the Commission concluded that while the County properly considered all three of the traditional approaches to valuation, that it failed to "give adequate consideration to the diminished value of the property resulting from external economic conditions, i.e., the decline in the market for turbines and in particular, the demand for nuclear turbines."

The Commission allowed the County's appraisal of 20% physical depreciation to stand. However, based on testimony of two of Taxpayer's experts concerning comparable sales and offerings, the Commission increased the adjustment for functional and economic obsolescence from the County's 22% to 40%. These changes resulted in the following valuation of Taxpayer's property:

| | |
|---|---:|
| Reproduction Cost New (per Flanagan Report) | 50,767,000 |
| Less: Physical Depreciation (20%) | (10,153,400) |
| subtotal | 40,613,600 |
| Less: functional and economic obsolescence (40%) | (16,245,440) |
| Total Depreciated Value of Improvements (as of 1 January 1983) | 24,368,160 |
| Land Value (per County Exhibit 16) | 5,143,000 |
| TOTAL | $29,511,160 |

[1] Taxpayer urges that this calculation is in error since it is premised on a reproduction cost new of $50,767,000 supplied by Mr. Flanagan. The argument is that since Mr. Flanagan arrived at this figure by using solely the cost method of appraisal and rejected the market approach, that the figure fails to meet the requirement of G.S. sec. 105-317(a) (effective until 1 January 1987)

that all factors bearing on value be considered. This argument is without merit.

The Commission concluded as a matter of law that the reproduction cost new of Taxpayer's property as reached by the County was essentially correct and that it was determined through the use of all three of the traditional approaches to valuation. From our review of the whole record on appeal, we find that this conclusion is supported by competent, material and substantial evidence. However, Taxpayer points out that Mr. Flanagan's figure, rather than the County's, was used by the Commission in its final order. While this is a correct statement, it is not grounds for altering the Commission's appraisal. As stated above, to rebut the presumption that an ad valorem tax assessment is correct, a taxpayer must show not only that the means used was wrong, but also that it resulted in an assessment *substantially* greater than the true value in money of the property. *In re Appeal of Amp, Inc.,* *supra.* Applying this rule to the instant case, we find the Taxpayer suffered no prejudice. Even if the Commission should have adopted the County's reproduction cost new, rather than Mr. Flanagan's figure, which we do not hold, the method used did not increase Taxpayer's assessment. *In re Appeal of Greensboro Office Partnership, supra.* In fact, since the County's reproduction cost new figure is slightly higher than Mr. Flanagan's figure, the Taxpayer actually benefited by the Commission's adopting the latter. The Taxpayer has failed to show that the valuation of its property is substantially greater than its true value. This assignment of error is overruled.

[2] By his second Assignment of Error, Taxpayer contends that the Commission erred in computing the depreciated value of the improvements to its property. Specifically, Taxpayer objects to the Commission's use of the residual method in calculating depreciation. Using this method, the Commission first subtracted the 20% physical depreciation from reproduction cost new. From the resulting subtotal, the Commission then subtracted 40% depreciation for functional and economic obsolescence.

Taxpayer complains that both types of depreciation should have been subtracted from the reproduction cost new figure, and that use of the residual method converted his 40% depreciation for functional and economic obsolescence into an effective rate of 32%. We find no error.

**IN RE APPEAL OF WESTINGHOUSE ELECTRIC CORP.**

[93 N.C. App. 710 (1989)]

Neither party to this appeal has cited us to any case law bearing on the proper method of calculating multiple depreciation. Our own research also reveals none. Taxpayer supports its contention by pointing to a statement from a manual on real estate appraisal: "In the cost approach, depreciation from all causes should be subtracted from current cost new." American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* (8th ed. 1983). This treatise is, of course, not binding authority on this Court. Further, while the quoted statement is correct as a general proposition, it does not indicate what method should be used in computation.

We believe that the Commission was free to choose a method of calculating depreciation based on its assessment of expert testimony. It is true that the Commission increased depreciation for economic and functional obsolescence based on testimony of two of Taxpayer's experts who did not use the residual method for calculation. In our view, this fact did not bind the Commission to employ these experts' method of calculation, as it was free to accept as much of their testimony as it found convincing. Two other experts, Mr. Flanagan, and Taxpayer's own expert Mr. McShane, in his written appraisal, recommended that the residual method be employed. In the absence of case law to the contrary, we cannot say that the Commission erred in adopting the position of certain experts over that of others.

For all the foregoing reasons, the decision of the North Carolina Tax Commission is

Affirmed.

Judges ARNOLD and PHILLIPS concur.