IN RE APPEAL OF BOOS

[95 N.C. App. 386 (1989)]

IN THE MATTER OF: THE APPEAL OF MARGUERETTE BOOS FROM THE
APPRAISAL OF CERTAIN REAL PROPERTY BY THE HYDE COUNTY
BOARD OF EQUALIZATION AND REVIEW FOR 1987

No. 8810PTC1281

(Filed 5 September 1989)

**Taxation § 25.4— ad valorem taxes—method of land valuation arbitrary**

Evidence was sufficient to support the North Carolina
Property Tax Commission's findings of fact and its conclusion
of law that the method of land valuation used by the Hyde
County tax assessor was arbitrary and that that method pro-
duced a value for petitioner's property substantially in excess
of the true value in money where the evidence tended to
show that the county arrived at the land's value by averaging
eight of fourteen comparable sales, omitting entirely six others;
the comparable sales should have been adjusted to allow rele-
vant comparisons with petitioner's parcel, then ranked in order
of comparability; county witnesses set a figure of $640 per
front foot (sound side) without considering the suitability for
building on petitioner's parcel which had two cemeteries,
wetlands, and limited depth; petitioner valued her land at
$140,000, while the final assessed value of the property was
$331,000; petitioner had access to a public road over a narrow
private path ten feet wide, but her property did not abut
the public way; and there was evidence that septic tanks could
not be built on petitioner's property.

APPEAL by Hyde County from the final decision of the North
Carolina Property Tax Commission entered 6 June 1988. Heard
in the Court of Appeals 6 June 1989.

This case concerns the real property tax valuation for a parcel
described in part as follows: "beginning at a stake at the edge
of Pamlico Sound at a point that bears N 14½ [degrees] E on
the mid point of the Ocracoke Coast Guard tower and N 68½
[degrees] E on the spire of the turret of Ocracoke Lighthouse."
The parties here are unusually interesting. Hyde County is one
of our oldest and most renowned counties having been named for
Governor Edward Hyde in 1712 and settled much earlier. Thad
Eure, North Carolina Manual (1988). It is a paradise of nature

with broad, sunlit lowlands and miles of estuarine waterways. Its county seat, Swan Quarter, is well-named as it is the temporary haven for thousands of swans, in season. Its offshore treasure is Ocracoke Island where the notorious pirate Edward Teach met more than his match in the Royal Navy's Lieutenant Maynard in 1718. R. E. Lee, Blackbeard the Pirate, A Reappraisal of His Life and Times (1974).

Mrs. Marguerette Boos and her now deceased husband were "newcomers" to the island having arrived in 1952. At age 77, she is the librarian of the State's smallest library which has a space of 8 × 10 feet and some 3,000 volumes. Her approximately 4½ acres comprise a relatively large parcel of the limited 775 acres of privately owned land on the island. The majority of the island is part of Cape Hatteras National Seashore Recreational Area.

The original appraisal value of the total property was $372,010.00. After appeals through the County Tax Department and the Hyde County Board of Equalization, the assessed value of the property was reduced to $331,000.00. Mrs. Boos then appealed to the North Carolina Property Tax Commission which found the true value of the property to be $162,850.00. Hyde County appeals.

*Adams, McCullough & Beard, by Charles C. Meeker, for appellee Marguerette Boos.*

*Merriman, Nicholls & Crampton, P.A., by W. Sidney Aldridge, for appellant Hyde County.*

LEWIS, Judge.

The octennial real property reappraisal for Hyde County pursuant to G.S. 105-286 was carried out effective 1 January 1987. The 4.5 acres of land owned by the taxpayer is located on Ocracoke Island, and consists of approximately 2.5 acres of high, sound front land, 1.1 acres of high, interior land, and .9 acres of wetlands. Two cemeteries are located on the property in which repose approximately 13 graves. A frame house on the property, described in the record as being in a poor state of repair is Mrs. Boos' home. She has access to a public road over a narrow private path ten feet wide, but her property does not abut the public way.

The Property Tax Commission sitting as the State Board of Equalization and Review under G.S. 105-290 exercised its preroga-

tive to take evidence *de novo* and consider the record as well. The Commission made extensive findings of fact and conclusions of law in reaching its determination of the property's value.

Upon appeal from the final decision of the Tax Commission, the scope of appellate review is defined by G.S. 105-345.2 which states in part:

(b) . . . The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. . . .

Our Supreme Court has said valuations fixed by the Commission shall be final and conclusive where no error of law or abuse of discretion is alleged. *Belk's Department Store, Inc. v. Guilford County*, 222 N.C. 441, 23 S.E.2d 897 (1943). Further, the Commission "has full authority, notwithstanding irregularities at the county level, to determine the valuation and enter it accordingly. Such valuation so fixed is final and conclusive unless error of law or abuse of discretion is shown." *In re Appeal of Broadcasting Corp.*, 273 N.C. 571, 579, 160 S.E.2d 728, 733 (1968).

There is a presumption that ad valorem tax assessments are correct. *In re Odom*, 56 N.C. App. 412, 289 S.E.2d 83, *cert. denied*, 305 N.C. 760, 292 S.E.2d 575 (1982). The taxpayer has the burden

**IN RE APPEAL OF BOOS**

[95 N.C. App. 386 (1989)]

of proving by competent, material and substantial evidence that "(1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; and (3) the assessment *substantially* exceeded the true value in money of the property." *In re Appeal of Amp. Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975) (emphasis original). The question before us is whether there was substantial evidence to support the Commission's findings of fact and its conclusions of law that the method of evaluation by the Hyde County assessor was arbitrary and that that method produced a value substantially in excess of the true value in money.

Hyde County's assignments of error may be grouped into five categories. First, it contends that the taxpayer did not produce competent and material evidence that the county used an arbitrary method of valuation. Second, it contends that the taxpayer did not produce competent and material evidence that the county's value was substantially in excess of the true value in money. Third, it contends that the Commission's value of the property is not based on competent, material and substantial evidence. Fourth, the county assigns error to the opinion testimony of a lay witness, Mr. Senseney. Fifth, the county challenges certain findings of fact as not supported by the evidence. As to these five categories we find substantial evidence to support the findings and conclusions.

First, the county contends the taxpayer did not produce evidence that the county used an arbitrary method of valuation. The Commission's finding, supported by the evidence, is that the county had averaged eight of fourteen comparable sales, omitting entirely, six others. The comparable sales should have been adjusted to allow relevant comparisons with the Boos parcel then ranked in order of comparability. The use of the resulting figures was found to be arbitrary and the evidence supports it. Further, the county witnesses set a figure of $640.00 per front foot (sound side) without considering the suitability for building on the parcel with two cemeteries, wetlands and limited depth. Setback requirements for the Coastal Area Management Act would significantly affect the extent of available building sites.

Second, the county contends the taxpayer did not produce evidence that the county's value was substantially in excess of the true value in money. Mrs. Boos valued the parcel at $140,000.00, which she said was based on no particular expertise or knowledge

but was "out of the blue," though she did know of some other sales. We hold that the owner of real property may testify as to its value. The presence of or lack of an objective basis for such opinion goes to weight, not admissibility. Evidence by the county included several sales offered as "comparables." One of the county's witnesses, Mr. Bell, testified that the Wikstrom sale, comparable sale number one, was "far and away [the] most comparable sale." The "high, soundfront land" was valued at $50,000 per acre and "high, interior acreage" at $24,000 per acre for a 41.4 acre tract. The Commission considered this tract and others and in fact adopted the acreage values from the Wikstrom sale. The Commission's findings of fact stated the county had failed to consider that some of the other "comparable sales" lots were entirely buildable whereas the Boos property has .9 acres of wetlands and two cemeteries. The Commission also found the county did not consider limited access to the property or the cemeteries.

The county's third argument is that the value found by the Commission is not based on competent, material and substantial evidence. The Commission had the direct and cross examination testimony of the witnesses of both parties as well as extensive documentary evidence. There was competent, material and substantial evidence upon which the Commission could base its findings and conclusions. The maps and the testimony of the taxpayer indicated the property had no access but by a path owned by others. The county produced nothing to rebut that evidence. Mr. Senseney's evidence as to access in addition to that of the taxpayer could not have been prejudicial.

Fourth, the county assigns error to the opinion testimony of Mr. Senseney, a landowner on the island. He stated it was his opinion that one "[c]ouldn't put a septic tank on it." This testimony occurred in the context of discussing the CAMA (Coastal Area Management Act) regulations requiring setbacks applicable to that property and why there would be no room for a septic tank. We find no prejudice in the admission of this evidence.

As to the county's assertion that other findings of fact by the Commissioner were not supported by evidence, we disagree. "The weight to be accorded relevant evidence is a matter for the factfinder, which is the Commission." *In re Appeal of Westinghouse Electric Corp.*, 93 N.C. App. 710, 712, 379 S.E.2d 37, 38 (1989).

We find the findings of fact and conclusions of the Commission are based upon and supported by competent, material and substantial evidence in the record.

The final order of the North Carolina Property Tax Commission is affirmed.

Affirmed.

Judges BECTON and PHILLIPS concur.