IN THE MATTER OF: APPEAL OF WINSTON-SALEM JOINT VENTURE FROM THE DECISION OF THE FORSYTH COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING REAL PROPERTY TAXATION FOR TAX YEAR 1997

No. COA00-912

(Filed 17 July 2001)

**1. Taxation— ad valorem—shopping mall—valuation method—income approach**

The Property Tax Commission appropriately used the income approach rather than the cost approach in valuing Hanes Mall for ad valorem taxes. Although the taxpayer cites In re Appeal of Belk-Broome Co., 119 N.C. App. 470 and argues that the outcome of the assessment should be limited by the cost method, that case states that the cost approach may not effectively reflect market conditions and leaves room for the fair market value to differ from the cost approach value. To hold otherwise would place improper restrictions on determining the fair market value.

**2. Taxation— ad valorem—shopping mall—valuation method—equal protection**

There was no equal protection violation in an ad valorem tax assessor's use of the income approach when appraising Hanes Mall even though all other commercial properties were appraised under the cost approach because there was evidence that Hanes Mall was the only super regional mall in the county and that it was unlike any other property in the county. The taxpayer did not show that it was discriminated against by being excluded from the same class as strip malls and the like because it did not show that it was entitled to be considered in that class.

Appeal by taxpayer from a final decision entered 20 March 2000 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 30 May 2001.

*Maupin Taylor & Ellis, P.A., by Charles B. Neely, Jr. and Nancy S. Rendleman; Fisk, Kart & Katz, by James P. Regan, for taxpayer-appellant.*

*Bell, Davis & Pitt, P.A., by John A. Cocklereece, Jr., Stephen M. Russell and Kevin G. Williams, for appellee-Forsyth County.*

HUNTER, Judge.

Taxpayer-appellant Winston-Salem Joint Venture (herein "Taxpayer") appeals the final decision of the North Carolina Property Tax Commission ("the Commission") modifying the Forsyth County Board of Equalization and Review's ("the Board") decision as to the value of Taxpayer's commercial property (referred to herein as "Hanes Mall"), and finding its appraised value to be $140,000,000. Taxpayer argues the Commission erred: (1) by failing to apply or properly consider the cost approach method in appraising Hanes Mall, and; (2) by adopting the County's expert appraiser's assessment of the property's value. Upon careful review of the record before us, we affirm the Commission's decision.

Finding no discrepancy in the parties' recitation of the facts, we take our account of the facts directly from Taxpayer's brief to this Court. Effective 1 January 1997, the Forsyth County Tax Assessor ("the Assessor") "appraised the real property associated with Hanes Mall in Winston-Salem at a total value of $162,725,000." Taxpayer appealed the assessment to the Board in a timely manner. Subsequently, the Board heard Taxpayer's appeal and "on December 4, 1997 . . . affirmed the decision of the Assessor." Then on 2 January 1998, Taxpayer appealed the Board's decision to the Commission. After a hearing which lasted several days, the Commission found, in pertinent part:

12. . . . [The] County [Assessor] used the direct capitalization method to arrive at a total value of $162,725,000 for the subject property. This method is used to convert an estimate of one year's income expectancy, or an annual average of several years' income expectancy into an indication of value in one direct step. . . . In general, the direct capitalization approach requires the use of comparable sales and the income derived therefrom to arrive at an appropriate capitalization rate. When using this approach to value the subject property, [the Assessor] did not apply or rely upon its 1997 schedule of values, rules and standards to arrive at the capitalization rate of 7.75%. Instead, the [Assessor] used data developed for a prior appraisal assignment that did not correlate with the rate information used to develop the 1997 schedule of values, standards and rules. Hence, the [Assessor] arrived at a capitalization rate of 7.75% and when that rate was applied to the applicable schedule of values, rules and standards it resulted in an improper classification of the subject property as an A plus mall.

13. . . . In Mr. Nafe's opinion [Taxpayer's expert witness], the value of the subject property is composed of three components: (1) real estate, (2) Hanes Mall's internal profit centers, and (3) the intangible personal property associated with Hanes Mall's business. . . .

14. In Mr. Nafe's opinion, in order to determine fair market value, the appraiser must identify and segregate the non-realty elements of the subject property so that his appraisal of the subject property would be limited to the fee simple in the property's real estate value. . . . In applying the cost approach, Mr. Nafe . . . estimated the value of the subject property to be $84,000,000. Under the income approach, Mr. Nafe arrived at total value $80,000,000 for the subject property when applying both the direct capitalization analysis and the discounted cash flow analysis. Mr. Nafe's going-concern value of the subject property as of January 1, 1997 was $130,000,000, denoted as follows:

| | |
|---|---|
| Fee simply [sic] real estate only: | $ 80,000,000 |
| Non-realty value: | $ 50,000,000 |
| Total Going Concern value: | $130,000,000 |

. . .

16. . . . In summary, Mr. Nafe concluded that the value of the subject real property . . . was $80,000,000 . . . . *He reached this valuation by applying the income approach, which is typically given greatest weight in the analysis of income-producing property.*

. . .

20. Investors in regional malls do not use the cost approach to determine market value because of the assumptions and wide variety of estimates that are placed upon such items as entrepreneurial profit, subsidies, and influences by anchor department stores. . . .

21. To arrive at an opinion of value for the subject property, Mr. . . . Korpacz, the [Assessor]'s expert witness, utilized the direct capitalization and yield capitalization approaches as recognized under the income method of valuation. While Mr. Korpacz utilized the sales comparison approach to value, he rejected the cost approach based upon his experience that investors in regional malls give little value to this approach to at arrive [sic] market value.

22. Mr. Korpacz considered business enterprise value in his value analysis of the subject property, but he rejected this concept because, based upon his experience, regional mall investors do not recognize or reflect this concept when investing in this particular market. . . .

23. Mr. Korpacz's fee simple opinion of value for the subject property . . . was $140,000,000. He reached this value when applying the income approach; analyzing market rents and determining that the appropriate capitalization rate was 8.55%. Mr. Korpacz's appraisal correlates with the County[Assessor]'s 1997 schedule of values, rules and standards in that his appraisal analysis yields a proper classification of the subject property as a B plus mall.

24. Of the three traditional appraisal methods considered by the Commission, the cost approach, the comparable sales approach, and the income approach, the income approach is the most reliable method in reaching market value for the subject property.

25. Even though the Commission considered the comparable sales and cost approaches to value, the Commission determined that those approaches would not yield fair market value of the subject property and should not be relied upon as the primary approaches to determine value.

(Emphasis added.) Thus, the Commission concluded as a matter of law:

2. In North Carolina, property must be valued for *ad valorem* tax assessment purposes at its "true value in money," which is statutorily defined as "market value[,]" [pursuant to N.C. Gen. Stat. § 105-283.]

. . .

3. *Ad valorem* assessments are presumed to be correct. In order for the Taxpayer to rebut the presumption of correctness, the Taxpayer must prove that the County [Assessor] employed an arbitrary or illegal method of valuation and that the assessment of the subject property substantially exceeded the true value in money of the subject property.

. . .

6. In reaching a total assessed value for the subject property . . . of $162,725,000, the County [Assessor] failed to properly apply its schedule of values, rules and standards, as required and directed by G.S. 105-317 of the North Carolina Machinery Act. The income capitalization rate developed by the County [Assessor] does not correlate with an appropriate classification of the subject property under the County[Assessor]'s schedule of values, rules and standards. . . .

. . .

10. The income approach is the most probative means to establish the fair market value of the subject property and even though it is the preferred method, a combination of the three methods may be used as long as the income approach is given the greatest weight. . . .

11. The value of the subject property, relying primary [sic] on the income approach . . . was $140,000,000.

(Emphasis added.) Taxpayer appeals the Commission's decision.

[1] Taxpayer first assigns error to the Commission's "failing to apply or properly consider the cost approach in appraising Hanes Mall." Although Taxpayer admits "this Court [has] held that . . . exclusive reliance on the cost approach [i]s an error of law and that the income approach should be the primary method used," relying on *In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 473, 458 S.E.2d 921, 923-24 (1995), *aff'd*, 342 N.C. 890, 467 S.E.2d 242 (1996), Taxpayer argues "this Court did not conclude that the cost approach should *not* be used." (Emphasis omitted and added.) As such, Taxpayer contends that "a combination of cost and income methods *could be* used so long as the income approach is given greatest weight" (emphasis added), and thus the cost approach *should have* been used in the present case because that method's "primary use is to establish a ceiling on valuation . . . ." *Belk*, 119 N.C. App. at 474, 458 S.E.2d at 924. We are unpersuaded.

N.C. Gen. Stat. § 105-345.2(b) (1999) governs the standard of appellate review as to property valuations, stating that the appellate Court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action." N.C. Gen. Stat. § 105-345.2(b). Further, the statute gives this Court the authority to

reverse, remand, modify, or declare void any decision which prejudices a plaintiff, where said decision is:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b). Moreover, our state's case law has plainly set out that "*ad valorem* tax assessments are presumed to be correct." *In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975) (emphasis added). However, in dealing with this very matter, this Court clearly held that

> the presumption is one of fact and is therefore rebuttable[; but t]o rebut the presumption, [Taxpayer-]Belk must produce " 'competent, material and substantial' evidence that tends to show that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property." [*Amp, Inc.*, 287 N.C.] at 563, 215 S.E.2d at 762. . . .

*Belk*, 119 N.C. App. at 473, 458 S.E.2d at 923 (emphasis in original) (citation omitted). Additionally, the Court went on to opine:

> It is generally accepted that the income approach is the most reliable method in reaching the market value of investment property[. . . and,] the cost approach's *primary* use is to establish a ceiling on valuation, rather than actual market value. . . . [However, t]he modern appraisal practice is to use cost approach as a secondary approach "because cost may not effectively reflect market conditions." *[Coastal Eagle Point] Oil Co. [v. West Deptfort Township]*, 13 N.J. Tax 242, 288 [(1993)] . . . .

*Id.* at 474, 458 S.E.2d at 924 (emphasis added).

We recognize that the Court's holding of what a taxpayer is required to prove is absolute. However, we deem the *Belk* Court's

statement, that "the cost approach's primary use is to establish a ceiling on valuation," (upon which the present Taxpayer relies), to be at most *dicta. Id.* This is because, even in its own assessment of which approach is most proper, the *Belk* Court plainly settled and stated that the goal of any valuation is to reach fair market value for the subject property—fair market value which accurately ". . . 'reflect[s] market conditions.' " *Id.* (quoting *Oil Co.*, 13 N.J. Tax 242, 288). The Court further stated:

> *The County [Assessor] is required to value all property for ad valorem tax purposes at its true value in money, which is its "market value."* North Carolina General Statutes § 105-283 (1992). Market value is defined in the statute as

> "the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used."

> *Id. An important factor in determining the property's market value is its highest and best use.* The Belk property must be valued at its highest and best use, which the parties agree is its present use . . . . *Therefore, the County, and the Commission [Assessors], are required to use a valuation methodology that reflects what willing buyers in the market for anchor department stores will pay for the subject property.* In doing so, the county must "consider at least [the property's] . . . past income; probable future income; and any other factors that may affect its value." North Carolina General Statutes § 105-317(a)(2) (1992).

*Id.* at 473-74, 458 S.E.2d at 923-24 (emphasis added) (citations omitted).

We note that in the *Belk* case, the cost approach for the subject property yielded a much higher value assessment than what was shown to be the property's "fair market value"—that is, what a willing buyer would pay a willing seller under the terms outlined above. As such, the cost approach's "ceiling on valuation" was therefore an irrelevant factor, and the Court refused to accept the cost approach value as fair market value. However, that is not so in the case at bar.

In applying *Belk* to the present case, we find Taxpayer's argument to be without merit. Taxpayer's business (though more than just an

anchor store) is of the exact type as that of Belk. Taxpayer does not argue that the income approach used by the Assessor was incorrect or unlawful, only that the outcome of the Assessor's assessment should have been limited by the Assessor's use of the cost method. However, the very case law upon which Taxpayer relies clearly states that the cost approach ". . . 'may not effectively reflect market conditions.' " *Id.* at 474, 458 S.E.2d at 924 (quoting *Oil Co.*, 13 N.J. Tax 242, 288). We recognize that it is Taxpayer's hope that this Court finds—since in the present instance the cost approach results in a much lower assessment—that the cost approach assessment should yield the maximum value of Hanes Mall.

However, we refuse to ignore the plain language used by the *Belk* Court. Instead, we hold that although the cost approach may often times result in the upper limit of fair market value, it does not necessarily need to be so. Therefore, we believe the precedent set forth in *Belk* leaves room for the fair market value to differ from the cost approach value. To hold otherwise would place improper restrictions on determining the fair market value of realty as required by statute, and render consideration of competent evidence reflecting fair market values above the cost approach assessment to be unacceptable. Further, we agree with the Commission that the cost approach "would not yield fair market value of the [mall] and should not be relied upon as the primary approach[] to determine value." Therefore, we hold that the Commission's use of the income approach—pursuant to *Belk*—was the appropriate valuation method in the case at bar.

[2] Taxpayer's second and final assignment of error is that "[t]he Commission's adoption of Mr. Korpacz's appraisal as its assessment of Hanes Mall resulted in a denial of Taxpayer's constitutional and statutory rights to equal protection and uniform taxation." In its brief to this Court, Taxpayer goes to great lengths in discussing cases which purport that "the use of one assessment methodology to assess the property of one group of taxpayers and another assessment methodology to assess the property of another group of taxpayers *in the same class* resulted in significant differences in assessed values of comparable properties and a denial of uniformity." (Emphasis added.) Thus, Taxpayer argues, because the Assessor treated Hanes Mall differently from "any other property in Forsyth County," Taxpayer has been discriminated against. We disagree.

Taxpayer is correct when it states that "[t]he U.S. Supreme Court has held that application of two distinct valuation methodologies to

IN RE APPEAL OF WINSTON-SALEM JOINT VENTURE

[144 N.C. App. 706 (2001)]

properties in the same class which results in systematic discrimination against one group of property owners is a clear violation of uniformity." Citing *Allegheny Pitts. v. Webster County*, 488 U.S. 336, 345, 102 L. Ed. 2d 688, 698 (1989). Additionally, per the parties' stipulations, the Assessor admits that:

> 16.  In performing its 1997 revaluation, the assessments made by the Forsyth County Assessor's Office of hotels and motels, investment grade apartment complexes, the Hanes Mall and the five anchor stores adjacent to the Hanes Mall were based upon the income approach to value, although the County may have considered other approaches to value. The assessments of *all other commercial and industrial properties* in Forsyth County including, but not limited to, strip centers and other shopping centers, retail stores, restaurants, nursing homes, bowling alleys, office buildings, theaters, and industrial enterprises were based upon the cost approach to value, although the County may have considered other approaches to value.

(Emphasis added.) However, Taxpayer offers no evidence that the Assessor utilized the cost approach to value another "super regional mall" and yet used the income approach *solely* to value Hanes Mall. Contrarily, the Assessor presented evidence that Hanes Mall is the only super regional mall in Forsyth County and that it is "unlike any other property in the county, which creates an inherent weakness for using the cost approach to determine a fair [market] value." Therefore, without a showing that Taxpayer's property was entitled to be considered in the same class as strip malls and the like, Taxpayer has failed to show it was discriminated against by being excluded from that class. In failing to fall within the same class, the assessment cannot violate the equal protection clauses of the United States and North Carolina Constitutions. *See Tax Appeal of County of Maui v. KM Hawaii, Inc.*, 81 Hawaii 248, 256, 915 P.2d 1349, 1357 (1996).

Additionally, we note Taxpayer failed to object or assign error to the Commission's findings that the Assessor's expert witness, Mr. Korpacz:

> 21.  . . . rejected the cost approach based upon his experience that investors in regional malls give little value to this approach to at arrive [sic] market value.
>
>       . . .

24. Of the three traditional appraisal methods considered by the Commission, . . . the income approach is the most reliable method in reaching market value for the subject property.

As such, Taxpayer has lost its right to argue those findings were not supported by substantial evidence of record.

The law has long been that:

The Commission has the authority and responsibility "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." [In re Appeal of Interstate Income Fund I, 126 N.C. App. 162, 164, 484 S.E.2d 450, 451 (1997)] (quoting In re McElwee, 304 N.C. 68, 87, 283 S.E.2d 115, 126-27 (1981)). . . .

In re Appeal of Phillip Morris, 130 N.C. App. 529, 532, 503 S.E.2d 679, 681, review denied, 349 N.C. 359, 525 S.E.2d 456 (1998). Further, "[t]he weight to be accorded relevant evidence is a matter for the factfinder, which is the Commission." In re Appeal of Westinghouse Electric Corp., 93 N.C. App. 710, 712, 379 S.E.2d 37, 38 (1989). Additionally:

Our Supreme Court has said valuations fixed by the Commission shall be final and conclusive where no error of law or abuse of discretion is alleged. Belk's Department Store, Inc. v. Guilford County, 222 N.C. 441, 23 S.E.2d 897 (1943). . . . [T]he Commission "has full authority, notwithstanding irregularities at the county level, to determine the valuation and enter it accordingly. Such valuation so fixed is final and conclusive unless error of law or abuse of discretion is shown." In re Appeal of Broadcasting Corp., 273 N.C. 571, 579, 160 S.E.2d 728, 733 (1968).

In re Appeal of Boos, 95 N.C. App. 386, 388, 382 S.E.2d 769, 770 (1989). Moreover, "[i]f the Commission's decision, considered in the light of the foregoing rules, is supported by substantial evidence, it cannot be overturned." Phillip Morris, 130 N.C. App. at 533, 503 S.E.2d at 682.

Having failed to show that the decision of the Commission was either: in violation of constitutional provisions, in excess of statutory authority, made upon unlawful proceedings, affected by other errors of law, unsupported by competent evidence, or arbitrary or capri-

DAWSON v. ATLANTA DESIGN ASSOCS., INC.

[144 N.C. App. 716 (2001)]

cious, we hold Taxpayer has failed to prove it was discriminated against. N.C. Gen. Stat. § 105-345.2(b). Additionally, without a showing that "the assessment *substantially* exceeded the true value in money of the property," *Amp*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (emphasis in original), Taxpayer has failed to rebut the presumption that its "*ad valorem* tax assessments are . . . correct." *Id.* at 562, 215 S.E.2d at 761 (emphasis added). Therefore, because we find the findings of fact and conclusions of the Commission are based upon and supported by competent, material and substantial evidence in the record, the Commission's final decision is

Affirmed.

Judges MARTIN and HUDSON concur.