IN THE MATTER OF THE APPEAL OF INTERSTATE INCOME FUND I (NOW KNOWN AS MARKETPLACE INCOME PROPERTIES, L.P.) (FORSYTH COUNTY), PETITIONER-APPELLANT

No. COA96-510

(Filed 6 May 1997)

**Taxation § 82 (NCI4th)— ad valorem taxes—shopping mall— absence of anchor tenant—method of valuation**

A county was not required to value a shopping mall for *ad valorem* tax purposes as if it had an anchor tenant where a portion of the mall's leasable space had been vacated in anticipation of attracting an anchor tenant; rather, the county could properly use data regarding the past income and earning potential of the mall and value the whole mall as small shop space.

**Am Jur 2d, State and Local Taxation §§ 167, 411, 761, 796.**

**Sale price of real property as evidence in determining value for tax assessment purposes. 89 ALR3d 1126.**

**Standing of one taxpayer to complain of underassessment or nonassessment of property of another for state and local taxation. 9 ALR4th 428.**

**Requirement of full-value real property taxation assessments. 42 ALR4th 676.**

Appeal by petitioner from final decision entered 12 December 1995 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 15 January 1997.

*Petree Stockton, L.L.P., by Richard E. Glaze and Mark A. Stafford, for petitioner-appellant.*

*Office of the Forsyth County Attorney, by P. Eugene Price, Jr., Davida W. Martin and Paul A. Sinal, for respondent-appellee Forsyth County.*

WALKER, Judge.

Marketplace Income Properties, L.P. (Marketplace) owns two contiguous parcels of real estate located in Winston-Salem off of the Peters Creek Parkway commercial corridor. The property consists of 24.01 acres, with 142,047 square feet of leasable space in a discount

IN RE APPEAL OF INTERSTATE INCOME FUND I

[126 N.C. App. 162 (1997)]

shopping mall, and a theater which has an area of 21,066 square feet. The properties were purchased in 1986 for $14,100,000.00. As of 1 January 1993, Forsyth County (the County) valued Marketplace's property for ad valorem tax purposes at $13,277,600.00. This value was increased to $13,401,200.00 following an appeal by Marketplace to the Forsyth County Board of Equalization and Review (the Board). Marketplace appealed the Board's decision to the North Carolina Property Tax Commission (the Commission). After correcting listing and measurement errors, and after obtaining certain actual income figures from Marketplace, the County revised the valuation to $10,620,500.00.

At the hearing, both the County appraiser, F. Elwood Mendenhall (Mendenhall), and Marketplace's appraiser, Bruce K. Tomlin (Tomlin), testified to the value of the property using the income capitalization approach. The two parcels were considered together for valuation purposes by all parties and by the Commission. However, the theater property is not in dispute in this appeal. The County's evidence tended to show that Marketplace operated the mall complex which contained small shops, but that the mall had never housed a large anchor store. Some time prior to 1 January 1993, Marketplace decided to attract an anchor tenant in the northern wing of the mall and subsequently vacated all tenants in that wing. Thereafter, Marketplace declined to lease this space to small shops and on 1 January 1993, this space was boarded up. In making his appraisal for the County, Mendenhall valued 142,047 square feet of leasable space in the mall at $8.00 per square foot and determined the value of the property to be $10,620,500.00.

In addition, the County, over Marketplace's objection, introduced Marketplace's application for hearing before the Commission (Form AV-14). Accompanying this application was an appraisal report completed by real estate appraiser Michael S. Clapp (Clapp) on behalf of Marketplace in early 1993. This report, which assigned the property a value of $10,600,000.00, was submitted to the Commission prior to the report completed by Tomlin. The approach used by Clapp was consistent with that used by Tomlin; however, Clapp's appraisal valued the property as of 1 April 1994 based on its prospective future value with an anchor tenant, and assumed that the costs necessary to upfit the vacant space for an anchor store and leasing fees had already been expended.

Marketplace presented evidence tending to show that the true value of the property was $6,500,000.00. To support this valuation,

IN RE APPEAL OF INTERSTATE INCOME FUND I

[126 N.C. App. 162 (1997)]

Marketplace established that as of 1 January 1993, the mall was only 64% occupied. Further, this low occupancy rate was due to increased competition from large department stores in regional malls, and also from "big box" retailers such as Office Depot and Wal-Mart. In addition, the physical layout of the mall resulted in inconveniences to the customers. Marketplace further argued that because the building was not suited to accommodate a large anchor tenant, significant expenditures would be required to upfit the space for such a tenant. In 1995, the space was leased to Hamricks Department Store as an anchor tenant.

After hearing the evidence, a majority of the Commission affirmed the decision of the Board but ordered the County to modify its tax records to reflect that the true value of the property was $10,620,500.00.

The duties of the Commission are quasi-judicial in nature and require the exercise of judgment and discretion. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 561, 215 S.E.2d 752, 761 (1975). It is the Commission's duty "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 126-27 (1981). The scope of review of this Court when reviewing an appeal of a decision by the Commission is set forth in N.C. Gen. Stat. § 105-345.2(b) (1995) as follows:

> The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

**IN RE APPEAL OF INTERSTATE INCOME FUND I**

[126 N.C. App. 162 (1997)]

"In making the foregoing determinations, the court shall review the whole record . . . and due account shall be taken of the rule of prejudicial error." N.C. Gen. Stat. § 105-345.2(c). "However, this Court may not reweigh the evidence or substitute its own evaluation of the evidence for that of the Commission." *In Re Appeal of Camel City Laundry Co.*, 123 N.C. App. 210, 213, 472 S.E.2d 402, 404 (1996). To determine whether the whole record supports the Commission's decision, this Court must evaluate whether the decision is supported by substantial evidence, and if it is, the decision cannot be overturned. *In Re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 394, 424 S.E.2d 212, 218, *disc. review denied*, 333 N.C. 538, 429 S.E.2d 561 (1993).

It is well-settled in this State that ad valorem tax assessments are presumed correct. *In re Appeal of Amp, Inc.*, 287 N.C. at 562, 215 S.E.2d at 761. In order to rebut this presumption, the taxpayer must present " 'competent, material and substantial' evidence that tends to show that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property." *Id.* at 563, 215 S.E.2d at 762 (citation omitted) (emphasis in original). It is not enough for the taxpayer to show that the method used by the county tax supervisor was wrong; the taxpayer must also show that the result of the valuation is substantially greater than the true value in money of the property assessed. *Id.* "True value" has been defined by N.C. Gen. Stat. § 105-283 (1995) as

> market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

When determining the true value of property, the appraiser must consider "at least its location; type of construction; age; replacement cost; cost; adaptability for residence, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value." N.C. Gen. Stat. § 105-317(a)(2) (1995).

Marketplace contends that the Commission erred in finding that the property was correctly valued at $10,620,500.00 because the County used an arbitrary or illegal method to value the mall and that

the resulting appraisal value substantially exceeded the property's true value in money. In particular, Marketplace argues that the County erred in its appraisal by improperly using as a guideline past income and estimated expenses instead of considering the actual income and expense data, thereby ignoring the need for anchor space in the mall. Marketplace also argues that the County improperly valued the whole mall as small shop space, i.e. $8.00 per square foot, instead of using a lower rental value for the 47,571 square feet as anchor space, and that it also failed to deduct the expenses necessary to upfit the vacant space for tenants. Marketplace contends that these errors caused the County to value the property at an amount which was 63% higher than its true monetary value.

The Commission found that the best indicator of value for the property was the income approach using market derived occupancy levels and rental and expense rates for retail properties in Forsyth County. This value—$10,620,500.00—was arrived at by using an average rental rate of $8.00 per square foot for all leasable space in the mall for a total potential gross income of $1,852,370.00. From this was deducted $185,237.00 reflecting a 10% vacancy rate, and $424,527.00 in expenses, resulting in a net income of $1,242,606.00, to which a capitalization rate of 11.7% was applied with reserves for taxes and other expenses.

In support of its contention that the County used an arbitrary or illegal method to value the mall, Marketplace cites *In Re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 458 S.E.2d 921 (1995), *aff'd per curiam*, 342 N.C. 890, 467 S.E.2d 242 (1996). In that case, Belk, an anchor store in the Valley Hills Mall in Hickory, contested the County's valuation of its property for ad valorem tax purposes. *Id.* at 471, 458 S.E.2d at 922. The Commission determined the value of Belk's property based solely on the cost approach to valuation. *Id.* This Court held that the income approach should be the primary method used to value property containing an anchor store, as it more accurately reflects the true value in money of such property. *Id.* at 474, 458 S.E.2d at 924. However, differences exist between the present case and *Belk*. In *Belk*, as an anchor store, it owned the building, land and parking area. *Id.* at 471, 458 S.E.2d at 922. Also, Belk signed an operating agreement requiring it to operate only as a department store and prohibiting it from selling the property without approval from the developer. *Id.* at 476, 458 S.E.2d at 925. This Court did recognize that space occupied by an anchor store is usually valued at a lower rate than space leased to small shops in an effort to

attract small shops for which the developer can charge a higher rental. *Id.*

Here, while the County established a value for Marketplace's property using the cost approach, it relied on the income approach as determinative in establishing the true value in money of the property. In addition to the differences enumerated in *Belk* and this case, the fact remains there was no existing lease agreement between Marketplace and an anchor tenant (store) as of 1 January 1993.

Also, our Supreme Court has stated that "[i]f it appears that the income actually received is less than the fair earning capacity of the property, the earning capacity should be substituted as a factor rather than the actual earnings. The fact-finding board can properly consider both." *In re Appeal of Greensboro Office Partnership*, 72 N.C. App. 635, 640, 325 S.E.2d 24, 26, *disc. review denied*, 313 N.C. 601, 330 S.E.2d 610 (1985) (*quoting In Re Pine Raleigh Corp.*, 258 N.C. 398, 403, 128 S.E.2d 855, 859 (1963)). Here, Marketplace elected to vacate a portion of the mall's leasable space in anticipation of attracting an anchor tenant. While the effect of this action was to decrease the mall's income, the County was authorized to use data regarding the past income and earning potential of the mall. The Commission was entitled to place more weight on the County's evidence and accept it as credible in reaching its decision. As this Court said in *Greensboro*, "the weight to be attributed to the evidence is a matter for the fact finder, which in this case is the Commission." 72 N.C. App. at 640, 325 S.E.2d at 26. Therefore, the County was not compelled to value the mall as if it contained an anchor tenant (store).

The Commission properly concluded that Marketplace failed to produce competent, material and substantial evidence that the County used an arbitrary or illegal method of valuation or that the assessment substantially exceeded the true value in money of the property. After reviewing the whole record, we conclude the Commission did not err in finding that the County properly valued the property at $10,620,500.00 as of 1 January 1993.

Affirmed.

Judges LEWIS and MARTIN, Mark D. concur.