503 S.E.2d 679 (1998)
In the Matter of Appeal of PHILIP MORRIS U.S.A. from the decision of the Cabarrus County Board of Equalization and Review concerning real property taxation for 1994.
No. COA97-848.
Court of Appeals of North Carolina.
August 18, 1998.
*681 Maupin, Taylor & Ellis, P.A. by Charles B. Neely, Jr., and Nancy S. Rendleman, Raleigh; Hunton & Williams by David A. Agosto, New York, NY, for taxpayer-appellant.
Parker, Poe, Adams & Bernstein, L.L.P. by Charles C. Meeker, Raleigh; Blakeney & Alexander by David L. Terry, Charlotte, for county-appellee.
JOHN C. MARTIN, Judge.
Philip Morris, U.S.A., (Philip Morris) appeals from a decision of the North Carolina Property Tax Commission (Commission) assigning a value of $335,686,000, for ad valorem tax purposes, to Philip Morris' cigarette manufacturing plant located in Cabarrus County. We affirm.
Briefly stated, the historical background of this case is as follows: Philip Morris completed its cigarette manufacturing plant in Cabarrus County in 1982. The plant is located on a 1,264.58 acre tract and consists of a main manufacturing building, an office building, seven warehouses, and several other buildings and improvements. In a previous decision of the Commission, the value of the subject real property as of 1 January 1991 was placed at $178,879,000, with the land valued at $16,038,000 and the buildings and improvements valued at $162,841,000.
In February 1991, Philip Morris began construction of an expansion to the main manufacturing building. The expansion had not been completed at the time this appeal was filed. The Commission's previous decision placed interim values on the construction in progress at $11,071,470 (total value of real property$189,950,470) as of 1 January 1992 and $23,322,720 (total value of real property$202,201,720) as of 1 January 1993.
On 21 November 1994, the Cabarrus County Board of Equalization and Review (County Board) fixed the value of the subject real property, as of 1 January 1994, at $302,122,140. The value of the land ($16,148,686) and buildings ($162,841,000) was placed at the same amounts as in the Commission's previous decision, but the value of the construction in progress was placed at $123,243,140.
Philip Morris appealed to the Commission. The parties stipulated before the Commission that the value of the land was $16,148,686; the value of the improvements was disputed. As of 1 January 1994, the expansion was, according to an unchallenged finding by the Commission, approximately seventy per cent (70%) complete.
"The duties of the [Property Tax] Commission are quasi-judicial in nature and require the exercise of judgment and discretion." In re Appeal of Interstate Income Fund I, 126 N.C.App. 162, 164, 484 S.E.2d 450, 451 (1997) (citing In re Appeal of AMP, Inc., 287 N.C. 547, 561, 215 S.E.2d 752, 761 (1975)). The Commission has the authority and responsibility "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." Id. (quoting In re McElwee, 304 N.C. 68, 87, 283 S.E.2d 115, 126-27 (1981)). G.S. § 105-345.2(b) establishes the standard of review to be applied by this Court upon an appeal of a decision of the Commission:
The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional provisions; or

*682 (2) In excess of statutory authority or jurisdiction of the Commission; or
(3) Made upon unlawful proceedings; or
(4) Affected by other errors of law; or
(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
(6) Arbitrary or capricious.
G.S. § 105-345.2(c) requires: "(I)n making the foregoing determinations, the court shall review the whole record ... and due account shall be taken of the rule of prejudicial error." Under a "whole record" analysis, the reviewing court may not
replace the [Commission's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo (citation omitted). On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the [Commission's] decision, to take into account whatever in the record fairly detracts from the weight of the [Commission's] evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the [Commission's] result, without taking into account the contradictory evidence or evidence from which conflicting inferences could be drawn (citation omitted).
In re McElwee, 304 N.C. 68, 87-8, 283 S.E.2d 115, 127 (1981). However, "it is clear that no court of the General Courts of Justice can weigh the evidence presented to the [Commission] and substitute its evaluation of the evidence for that of the [Commission]." In re Appeal of AMP, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). If the Commission's decision, considered in the light of the foregoing rules, is supported by substantial evidence, it cannot be overturned. Interstate Income Fund I, supra; In re Appeal of Perry-Griffin Foundation, 108 N.C.App. 383, 424 S.E.2d 212, disc. review denied, 333 N.C. 538, 429 S.E.2d 561 (1993).
An ad valorem tax assessment is presumed correct. In re Appeal of AMP, supra. This presumption may be rebutted by material, substantial, and competent evidence that an arbitrary or illegal method of valuation was used and the assessment substantially exceeded the true value in money of the property. Id.; Interstate Income Fund I, supra. In this case, the County conceded before the Commission that the County Board had acted arbitrarily in reaching the assessed value; the only issue before the Commission, therefore, was whether the assessed value was substantially higher or lower than the true value in money of the property as of 1 January 1994. G.S. § 105-283 defines true value
as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.
Because the County, in conceding that its Board of Equalization and Review had reached its assessment by using an arbitrary method, contended the County Board's valuation was substantially lower than the property's true value, we hold the burden was upon the County to go forward with evidence to show that the true value of the property exceeded the County Board's assessment.

I.
In its first series of arguments, Philip Morris contends the Commission's valuation of its plant was arbitrary and capricious; was unsupported by competent, material and substantial evidence; and was affected by errors of law. We have examined the arguments and reject them.

A.
Initially, Philip Morris argues the Commission committed an error of law because it improperly included personal property costs in its valuation of Philip Morris' real property, resulting in a significantly higher valuation than the building's true value. Philip Morris supports this contention by citing the Commission's valuation methodology, in which it reduced the stipulated total *683 cost of the expansion project as of 31 December 1993, $187,600,149, by only $34,735,345 to deduct the value of personal property and accounting accruals. According to William Domoe, an expert appraisal witness testifying on behalf of Philip Morris, this figure is significantly lower than the actual value of the personal property which should have been deducted before an accurate final value of the real property could be reached.
Philip Morris' interpretation of the Commission's method of valuation fails to consider the analysis in its entirety. In the second step of the methodology, the Commission deducted $34,735,345 for personal property costs and accounting accruals. In finding of fact # 7, it also found:
7. The expansion cost figure of $187,600,149 includes costs that do not contribute to the value of Taxpayer's property. These non-value producing costs are attributable to personal property, accounting accruals, excessive construction costs.... Accordingly, these costs should not be included in a valuation of the Taxpayer's property for taxation purposes. After hearing testimony of all the experts, the Commission finds as a fact that fifty percent (50%) of the costs of the expansion facilities were excessive costs and did not, therefore, contribute to value.
Accordingly, the Commission deducted an additional fifty percent (50%) in step eight of its calculation to account for "excess costs", a portion of which is attributable to personal property expenses. In utilizing this form of evaluation, the Commission was relying upon the methodologies suggested by both Alan Hand and Richard Kelley, appraisers for the County, in which they did not specifically deduct the costs for personal property, but instead included those costs with excess costs which were then deducted from the total cost figures. We believe that the Commission's system of valuation, even though it differed from the system advocated by Philip Morris, which included an itemized large deduction for personal property expenses, was supported by competent evidence. Accordingly, we hold that the Commission did not err by adopting the system of appraisal advocated by the County and including personal property expenses as a portion of excess costs.

B.
Philip Morris also contends the Commission erred by not adjusting the expansion costs to 1 January 1991 levels when it valued the property. "An increase or decrease in the appraised value of real property ... shall be made in accordance with the schedules, standards, and rules used in the county's most recent general reappraisal or horizontal adjustment." N.C. Gen.Stat. § 105-287(c) (1987). Cabarrus County's most recent reevaluation year was 1991, thus the parties stipulated that the value of the improvements to the land should be appraised at what those improvements would have been worth on 1 January 1991, rather than reflecting economic trends occurring since that date. Witnesses for both sides testified that construction costs had increased in the range of 6-8% between 1991 and 1994. Philip Morris argues, however, that the Commission used the actual costs incurred on the expansion during the period from 1991 through 31 December 1993 in valuing the property, without making the necessary adjustments to compensate for the inflationary increase, and thereby arriving at a substantially higher value.
The burden is upon Philip Morris to establish that the Commission did not adjust for inflationary increases; it is not the County's burden to establish that such adjustments were made. In re Appeal of AMP, supra. Furthermore, "[t]he members of the [Property Tax Commission] are public officers, and the [Commission's] official acts are presumed to be made in good faith and in accordance with law.... Every reasonable intendment will be made in support of these presumptions." Albemarle Electric Membership Corp. v. Alexander, 282 N.C. 402, 409, 192 S.E.2d 811, 816 (1972). Witnesses for both parties agreed that the total costs should be adjusted downward to account for inflation between 1991 and 1994; it is reasonable to assume that, in arriving at the value of the expansion, the Commission contemplated this necessity and included price escalations in its reduction of the expansion cost figure by fifty percent to reflect excess costs.
*684 Philip Morris has not directed us to any evidence to suggest that the value placed upon the real property reflected increases due to general economic trends in Cabarrus County since 1991. Thus, we hold the Commission did not commit an error of law in its valuation.

C.
Philip Morris further contends the Commission reached a value in excess of the property's true value because it arrived at its figures using an extrapolation method of valuation that was arbitrary, illegal, and unsupported by the evidence. Under the disputed method, the Commission calculated the actual cost per square foot of the expansion, then multiplied that figure by the total square footage of the Main Building to estimate the cost of that building. Philip Morris alleges that this system generated an erroneously high valuation of the plant because the Main Building and the expansion are not similar enough for this method to result in an accurate assessment.
Philip Morris begins its challenge to the Commission's formula by contending that the similarity of the two buildings, the basic premise of the Commission's methodology, was not established by competent evidence. Philip Morris presented evidence that the expansion has a higher, more costly, quality of construction than the Main Building, which resulted in the Commission assessing the plant a significantly higher value than its true worth. However, there is substantial evidence in the record to the contrary. Richard Kelley, the County's appraisal expert, testified that the two buildings were "highly similar in the significant elements." He further stated that each building had expensive components that offset the expensive components of the other. Additionally, Kelley explained that the original building has higher costs in some areas than the expansion, including higher central power plant, utility connection, and land improvement costs. The Commission's determination that the buildings are similar enough for the extrapolation method of assessment to generate accurate values is supported by substantial evidence, considering the whole record.
Philip Morris also challenges the Commission's computations by arguing it committed an error of law when it adopted this methodology to ascertain the plant's true value. Market value should be determined based upon a hypothetical, arms-length sale between a willing buyer and a willing seller; Philip Morris contends the method selected by the Commission incorrectly sought to determine the value of the plant to taxpayer. In re Southern Railway Co., 313 N.C. 177, 328 S.E.2d 235 (1985). "[A] failure to follow the statutory standard by approaching ... appraisals solely from the seller-owner's standpoint so detracts from the usefulness of his methods that, on the whole record test,... it was error for the Commission to adopt [the methods]." Id. at 188, 328 S.E.2d at 243.
In general, three methods of appraisal are recognized as the most reliable and appropriate means of assessing true value: the income approach; the cost approach; and the sales approach. In re Appeal of Belk-Broome Co., 119 N.C.App. 470, 458 S.E.2d 921 (1995), affirmed, 342 N.C. 890, 467 S.E.2d 242 (1996). The appraisal experts for both parties testified that where, as here, evidence of comparable sales is not readily available, the cost approach is the most accepted method of determining true value. Furthermore, in a prior appeal to the Commission involving the same property, the Commission used the cost approach method to determine value for the 1991, 1992, and 1993 tax years. Philip Morris has not appealed from that decision.
Philip Morris, however, contends the method used by the County's appraiser, Richard Kelley, was not designed to determine market value based on an arms-length transaction; rather, it contends, Mr. Kelley's approach determined the value of the plant to Philip Morris and, under Southern Railway, was an invalid basis upon which to determine value. Thus, Philip Morris argues, the Commission erred when it relied upon Mr. Kelley's appraisal methods. We disagree.
Mr. Kelley testified that he used a version of the cost method, the computation of the *685 actual costs incurred in the development of the property, to reach his opinion as to true value. Under his methodology, the actual cost of the expansion was used to estimate the cost of the Main Building, adjusted to remove personal property and excess costs, and added the results to determine the plant's total value. Although Philip Morris offered evidence to the contrary, there was substantial evidence before the Commission that the construction of the original plant and the expansion plant were comparable. Unlike the appraiser in Southern Railway, who admitted that his valuation of the disputed property was based solely on its worth to the taxpayer, Mr. Kelley applied an appropriate version of the generally accepted cost method of appraisal.
Philip Morris' final argument against the Commission's acceptance of Mr. Kelley's appraisal methodology is that it was not supported by the evidence, and therefore the Commission's opinion is fatally flawed. Philip Morris' argument is based upon Mr. Kelley's testimony that he had relied upon the calculations of Alan Hand, a professional cost estimator, for some of the data he used to assess the plant's value. Mr. Hand admitted that he did not study the construction of the original main plant building while preparing his report, and was unaware that Kelley was planning to use his research to extrapolate the expansion's value onto the original building. Philip Morris further contends that Mr. Kelley's personal familiarity with the buildings was based strictly upon visual observations conducted over a short period of time, and that these weaknesses undermine and invalidate the Commission's application of his appraisal methods.
We believe that the record discloses sufficient evidence to support the Commission's application of Mr. Kelley's appraisal methods. It is important to note that the Commission did not adopt Mr. Kelley's opinions as to the plant's value; it merely adopted his methodology and made its own computations to arrive at a true value which was between the values advocated by the experts for the opposing parties. We will not weigh the conflicting evidence and substitute our judgment for that of the Commission. In re Appeal of AMP, supra. Applying the whole record test, we believe the Commission acted within its authority when, after weighing the conflicting appraisal evidence, it accepted Mr. Kelley's method of determining true value, rather than the methods offered by Philip Morris' experts, as the most reliable under the circumstances.

II.
Philip Morris next contends the Commission erred by failing to conclude that Philip Morris had shown that the County's assessment of the property was substantially in excess of its true value. We have previously noted that the County conceded before the Commission that the County Board of Equalization and Review had used an arbitrary method of appraising the property's true value and contended the County Board's assessment substantially undervalued the property. The County contended, and had the burden of producing evidence to show, that the property had a true value of $452,909,108; in its application to the Commission, Philip Morris requested that the true value be fixed at $204,304,000. The thrust of Philip Morris' argument before this Court appears to be that its appraisers, who reached opinions that the property had a true value of $225,000,000 and $235,000,000, respectively, were better qualified and offered more persuasive evidence than the witnesses offered by the County, and reached values substantially below those reached by the County Board or the Commission. Therefore, the argument seems to go, the Commission should have found that Philip Morris has shown that the property's true value is substantially less than fixed by the County or the Commission.
It is apparent from the language of the Commission's decision that it quite properly accorded no presumption of correctness to the County's figures and that it fulfilled its duty as a trial tribunal to "hear the evidence of both sides, to determine its weight and sufficiency and the credibility of witnesses, to draw inferences, and to appraise conflicting and circumstantial evidence, all in order to determine whether the [County] met its burden." In re Southern Railway Co., 313 N.C. *686 at 182, 328 S.E.2d at 239. We will not "substitute our judgment for that of the agency when the evidence is conflicting." In re McElwee, 304 N.C. 68, 87, 283 S.E.2d 115, 127 (1981). Even under a whole record analysis, the reviewing court cannot "replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo." Id. Therefore, we reject this argument and overrule the assignments of error upon which it is based.

III.
By its final argument, Philip Morris contends that since it satisfied its burden of rebutting the presumption of correctness afforded the County's valuation, the Commission should have shifted the burden to the County to prove that the true value of the property exceeded that determined by the County Board, or that the value as determined by the Board was not substantially higher than the true value. This argument would have merit only if we agreed with Philip Morris' preceding argument that it had met its initial burden of rebutting the presumption of correctness of the County's assessment. In re Southern Railway Co., supra. However, we have rejected that argument and, therefore, it is unnecessary for us to consider whether the County has met its burden of production.
In conclusion, we hold that the Commission's decision is supported by substantial, competent, and material evidence in view of the whole record, was not arbitrary and capricious, and was unaffected by errors of law. Therefore, the decision will be affirmed.
Affirmed.
WALKER, J., concurs.
MARK D. MARTIN, J., concurs in a separate opinion.
MARK D. MARTIN, Judge, concurring.
On 24 June 1994 the Cabarrus County Tax Assessor advised the taxpayer that the real property associated with its Cabarrus County facility had a value, as of 1 January 1994, of $266,875,870.
On appeal to the Cabarrus County Board of Equalization and Review, the taxpayer's real property was assessed, as of 1 January 1994, at $302,122,140, a 13% increase from the Cabarrus County Tax Assessor.
Finally, on appeal to the North Carolina Property Tax Commission, the Commission entered a final decision on 18 March 1997 assessing the value of the real property as of 1 January 1994 at $335,686,000, a 25% increase from the original assessment.
Notwithstanding the de novo nature of administrative tax appeals, the perception left by the present case, whether warranted or unwarranted, is that the taxpayer was punished for exercising its legal right of administrative review. Nevertheless, I discern no legal error and therefore concur in the majority opinion.