IN THE MATTER OF: APPEAL OF BERMUDA RUN PROPERTY OWNERS FROM THE DECISION OF THE DAVIE COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALUATION OF CERTAIN REAL PROPERTY FOR TAX YEAR 1999

No. COA00-833

(Filed 21 August 2001)

## Taxation— real property appraisal—country club fees included

A decision by the Property Tax Commission was affirmed where the property owners objected to the inclusion in their tax appraisal of their country club initiation fee where they were required by their restrictive covenants to join the country club and to pay the difference between the initiation fee of the previous owner and the current fee. Although the homeowners contend membership in the country club is a form of intangible personal property, a challenge to tax valuation requires a taxpayer to demonstrate that an erroneous standard was employed by the assessor and that the use of this standard caused the valuation to be substantially in excess of its true value. The taxpayers in this case failed to produce any evidence that their properties were appraised at an amount substantially exceeding true value.

Appeal by property owners from decision of the Property Tax Commission sitting as the State Board of Equalization and Review, entered in Wake County 16 May 2000. Heard in the Court of Appeals 26 April 2001.

*Blanco Tackabery Combs & Matamoros, P.A., by George E. Hollodick and Stephen C. Minnich, for appellants.*

*Robert E. Price, Jr. & Associates, P.A. by Robert E. Price, Jr., for appellees.*

BIGGS, Judge.

Appellants, property owners in the Bermuda Run communities (subject communities) of Hamilton Court, Pembrooke Ridge, Warwicke Place, St. George Place, River Hill, James Way, and The Highlands, all located in Davie County, appeal from a final order of the North Carolina Property Tax Commission (Commission) sitting as the State Board of Equalization and Review. The Commission's

order confirmed the decision of the Davie County Board of Equalization, which affirmed the Davie County Assessor's inclusion in the tax appraisals of appellants' properties, an amount attributable to country club membership. We affirm the Commission's order.

The appellants are required, by the terms of restrictive covenants encumbering their properties, to join the Bermuda Run Country Club (Country Club) when they acquire a property in a subject community. The restrictive covenants are recorded in a Declaration of Covenants, Conditions, and Restrictions, applicable to each of the subject communities. The initiation fee for joining the Country Club is due when title to the property is transferred. The purchaser gets a credit towards the total initiation fee in the amount of the fee in effect at the time that the previous owner obtained the property. Each new purchaser is only obligated to pay the difference, if any, between the initiation fee in effect at the time of purchase and the fee paid by the previous owner. Thus, a membership in the Country Club is associated with each property, and all the new buyer needs to do is bring the initiation fee up to date.

Several provisions of the restrictive covenants serve to link a membership in the Country Club to every property in the subject communities. The restrictive covenants make Country Club membership mandatory for each purchaser of real property. The covenants also state that "[s]uch membership shall not be a personal right, but shall run with the ownership of a Dwelling Unit." Further, the restrictive covenants reserve for the Country Club a right of first refusal to purchase property that has been offered for sale. The exercise of this right enables the Country Club to prevent the transfer of any property that is not subject to the payment of an initiation fee.

Since 1994, the Davie County assessor has included $10,000 in his calculations of the appraised value of real estate in the subject communities, to represent an amount equal to the initiation fee in effect at the time of the last revaluation. It is this element of the appraised value of their properties to which appellants object. In 1999, appellants filed objections to the valuation of their properties with the Davie County Board of Equalization. On 29 July 1999, the County Board affirmed the practice of the County Assessor of including the initiation fee as an element of the value of real property in the subject communities. Appellants then appealed to the Commission, which heard the matter on 25 February 2000. After considering the evidence and arguments presented by the appellants, the Commission, on 16

IN RE APPEAL OF BERMUDA RUN PROP. OWNERS

[145 N.C. App. 672 (2001)]

May 2000, entered an order confirming the County Board's decision affirming the County Assessor's assessments of appellants properties for 1999. The Commission's order was based on conclusions of law that may be summarized as follows:

1. The County Assessor properly appraised and assessed the appellants' real properties by including amounts attributable to the Country Club membership fee.

2. The Country Club memberships are rights and privileges "belonging to" and "appertaining to" the appellants' real property, and are not "intangible personal property."

3. The appellants did not show by competent, material, and substantial evidence that the County employed an arbitrary or illegal method of appraisal of their properties.

4. The appellants did not produce competent, material, and substantial evidence that the County's assessments of their properties substantially exceeded the true value in money of the subject properties.

5. The appellants failed to present any evidence challenging the accuracy or legality of the 1994 schedules of values, standards, and rules used by the County.

On 9 June 2000, appellants gave notice of appeal from the Commission's order. For the reasons discussed below, we affirm the Commission's order.

This Court's review of a final order of the Commission is governed by N.C.G.S. § 105-345.2. *See In re McElwee*, 304 N.C. 68, 283 S.E.2d 115 (1981). This statute states that:

. . . (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are: (1) In violation of constitutional provisions; or (2) In excess of statutory authority or jurisdiction of the Commission; or (3) Made upon unlawful proceedings; or (4) Affected by other errors

of law; or (5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or (6) Arbitrary or capricious. . . .

Other established principles guiding our review of the Commission's decision are: (1) the reviewing court is not free to weigh the evidence and substitute its evaluation for that of the Commission; (2) the correctness of tax assessments, the good faith of tax assessors, and the validity of their actions are presumed; (3) *ad valorem* tax assessments are presumed to be correct; and (4) the taxpayer has the burden of showing that the assessment was erroneous. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E.2d 752 (1975); *In re Appeal of Owens*, 144 N.C. App. 349, 547 S.E.2d 827 (2001); *In re Appeal of Parsons*, 123 N.C. App. 32, 472 S.E.2d 182 (1996).

The policy behind the presumption of correctness "arises out of the obvious futility of allowing a taxpayer to fix the final value of his property for purposes of *ad valorem* taxation. . . . If the presumption did not attach, then every taxpayer would have unlimited freedom to challenge the valuation placed upon his property, regardless of the merit of such challenge." *In re Appeal of Amp, Inc.*, 287 N.C. at 563, 215 S.E.2d at 762. The presumption is one of fact, and is, therefore, rebuttable. *In re Appeal of Winston-Salem Joint Venture*, 144 N.C. App. 706, 551 S.E.2d 450 (2001). North Carolina case law clearly establishes the requirements for overcoming the presumption of correctness of *ad valorem* tax assessments:

A taxpayer may rebut this presumption by producing 'competent, material and substantial' evidence that tends to show that: (1) either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; **AND** (3) the assessment *substantially* exceeded the true value in money of the property[.]

*In re Appeal of Camel City Laundry*, 123 N.C. App. 210, 214, 472 S.E.2d 402, 404 (1996), *disc. rev. denied*, 345 N.C. 342, 483 S.E.2d 162 (1997), citing *In re Appeal of Amp, Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975) (emphasis in original). North Carolina appellate courts have consistently adhered to the rule of *Amp*, that a successful challenge to tax valuation requires a taxpayer to demonstrate both that an erroneous standard was employed by the assessor, **and also** that the use of this standard prejudiced the taxpayer by causing the valuation of his property to be "substantially in excess" of its true value. *See, e.g., In re McElwee*, 304 N.C. 68, 283 S.E.2d 115 (1981)

(after valuation method found to be both illegal and arbitrary, Court proceeds to calculate whether appraised value substantially over true value); *In re Appeal of Philip Morris,* 130 N.C. App. 529, 503 S.E.2d 679, *disc. review denied,* 349 N.C. 359, 525 S.E.2d 456 (1998) (although county concedes that it used arbitrary assessment method, appraisal affirmed where taxpayer fails to prove that the arbitrary method resulted in excessive valuation).

In the instant case, the appellants have argued that the initiation fee of $10,000 was improperly considered as a factor in the value of their properties. They contend that membership in the Country Club is a form of intangible personal property, as defined in N.C.G.S. § 105-273(8). Intangible personal property is excluded from *ad valorem* taxation under N.C.G.S. § 105-275(31). Appellants argue that the County's inclusion of the amount attributable to the initiation fee in the appraised tax value of their properties is a tax on intangible personal property. In contrast, the County's position is that, under the specific facts of this case, the initiation fee may properly be treated as a part of the appellants' real property, as defined by N.C.G.S. § 105-273(13). While the parties have presented arguments concerning the appropriate way to characterize the mandatory Country Club initiation fee, their contentions are relevant only to the first prong of the *Amp* test: whether the County employed an illegal or arbitrary method of valuation. Because we conclude that the appellants have presented no evidence with respect to the second prong of this test, we need not address whether the method used was proper. *In re Appeal of Philip Morris,* 130 N.C. App. 529, 503 S.E.2d 679, *disc. review denied,* 349 N.C. 359, 525 S.E.2d 456 (1998).

Under the *Amp* test, appellants are required to present evidence that the *ad valorem* tax values arrived at by the Davie County assessor are "substantially greater" than the true value of the subject properties:

Simply stated, it is not enough for the taxpayer to show that the means adopted by the tax supervisor were wrong, he must also show that the result arrived at is *substantially* greater than the true value in money of the property assessed, i.e., that the valuation was *unreasonably* high. . . . Whether the county used the correct *method* of computing *ad valorem* valuation is not the determinative issue. Of more importance than the method used in determining the valuation is the result reached. (emphasis in original)

**IN RE APPEAL OF BERMUDA RUN PROP. OWNERS**

[145 N.C. App. 672 (2001)]

*In re Appeal of Amp, Inc.*, 287 N.C. 547, 563, 575, 215 S.E.2d 752, 762, 769 (1975). The determination of the true value of real estate is governed by N.C.G.S. § 105-283, Uniform Appraisal Standards, which directs that property is to be appraised at its "true value," defined as follows:

> [T]he words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used. . . .

In the instant case, the Commission concluded in its order that the appellants "did not produce competent, material, and substantial evidence that the County's assessments of their properties substantially exceeded the true value in money of the subject properties." We agree with this conclusion.

The record is devoid of any evidence of either the appraised value of the subject properties, or of some other dollar amount that the appellants propose as the true value. The appellants' brief states that, although they object to the inclusion of the 1994 Country Club initiation fee as an element of the appraised value of their properties, appellants "are not otherwise contesting the appraised value of their real property." Further, during the hearing before the Commission, the appellants acknowledged their failure to present evidence on valuation:

> MR. MINNICH (APPELLANTS' ATTORNEY): ONE THING THAT MR. PRICE (COUNTY'S ATTORNEY) POINTED OUT IS THAT WE HAVE NOT PRESENTED, AND WE DO NOT INTEND TO PRESENT, ANY SPECIFIC EVIDENCE ON VALUATION OF THESE PROPERTIES. AND THAT'S ABSOLUTELY THE CASE. WE'RE REPRESENTING 80 TO 90 TAXPAYERS, SOMEWHERE IN THAT RANGE. IT'S JUST NOT PRACTICAL.
>
> . . .
>
> MR. WHEELER (CHAIR OF PROPERTY TAX COMMISSION): OKAY. DO YOU—ARE YOU AWARE OF THE *AMP* TEST AND THE PROPERTY TAX COMMISSION?
>
> MR. MINNICH: I APOLOGIZE, I AM NOT.

MR. WHEELER: WELL, PART OF THAT IS THAT TAXPAYER APPEALS BEFORE THE PROPERTY TAX COMMISSION HAS— THE TAXPAYER HAS THE BURDEN HERE, NOT THE COUNTY BUT THE TAXPAYER.

MR. MINNICH: SURE.

MR. WHEELER: AND ONE OF THOSE TESTS IS THAT THE DIF- FERENCE IN VALUE SHOULD—HAS TO BE SUBSTANTIAL.

Although informed by the Commission of the burden of proof and of the need to present valuation evidence, the appellants did not do so. A determination of the true value of property requires numerical data, dollar amounts, or other statistical information. *See, e.g., In re McElwee,* 304 N.C. 68, 283 S.E.2d 115 (1981) (Commission reversed where court finds that appellants have demonstrated by competent evidence that the dollar amount per acre proposed by appellants rep- resented the true value of their property); *In re Appeal of Interstate Income Fund I,* 126 N.C. App. 162, 484 S.E.2d 450 (1997) (county's method of calculating value of shopping center analyzed in relation to the dollar amount thus arrived at for property's true value); *In re Appeal of Senseney,* 95 N.C. App. 407, 382 S.E.2d 765 (1989) (court looks at competing proposed values of land in question). Without such evidence, this Court is unable to determine whether or not the appraised value "substantially exceeds" a property's true value.

The amount of the challenged element of real property appraisal is $10,000. However, the appellants have not alleged that the appraised valuation of their properties was too high by an average of $10,000. Assuming, *arguendo,* that it was improper for the County to include the initiation fee in making its appraisal, we have no basis to conclude that the resultant assessment would be $10,000 over the true value. Moreover, the appellants have not presented evidence to suggest any specific amount by which the appraised value of the sub- ject properties exceeds their true value, or what amount they pro- pose for that true value. We therefore hold that the appellants failed to "produce competent, material, and substantial evidence that the County's assessments of their properties substantially exceeded the true value in money of the subject properties." Accordingly, the appellants have not met their burden of proof to show that the assess- ment of their properties was erroneous.

Having found that the appellants failed to produce any evidence that their properties were appraised at an amount substantially

exceeding the true value, we have no need to decide whether it was proper for the assessor to include the amount of the 1994 initiation fee in calculating the tax appraisal value of these properties.

For the reasons discussed herein, we affirm the order of the Commission.

Affirmed.

Judges MARTIN and THOMAS concur.