CALABRIA, Judge.
In 2001, Orange County conducted a revaluation of all property located within the county. As a result of this revaluation, two parcels of land (the "subject properties") owned by the Estate of Johnnie M. Battle (the "taxpayer") and located in the downtown *254 area of Chapel Hill were assigned a total value of $279,406.00.[1] The taxpayer disagreed and appealed the valuation to the Property Tax Commission (the "Commission") sitting as the State Board of Equalization and Review. Prior to a hearing before the Commission, the parties stipulated that the subject properties "ha[d] been appraised in accord with application of the Orange County Schedule of Values." The parties further stipulated that "Orange County appraised [the subject properties] without reference to the race of the property owners, as the County's schedule of values and their application [are] colorblind."
The Commission heard arguments from the taxpayer and the County. The taxpayer contended that the County's colorblind policy perpetuated a racist structure in North Carolina that originated prior to the Civil War. The Commission found, in pertinent part, as follows:
5. The County properly applied its schedule of values, rules and standards to Taxpayer's properties consistent with the County's appraisal of similar properties.
6. The value assigned by the County Board to Taxpayer's properties did not substantially exceed the true values in money of the subject properties as of January 1, 2001.
7. The true values in money of the subject properties, as of January 1, 2001, were [the values assigned by the County Board to the subject properties].
Based on these findings of fact, the Commission concluded as a matter of law that the taxpayer failed to show by competent, material and substantial evidence that (1) "the subject properties were not properly appraised" according to the applicable statutory provisions, (2) "the County employed an arbitrary or illegal method of appraisal" as to the subject properties, or (3) the assigned values substantially exceeded the true values in money of the subject properties. The Commission further concluded that the true values in money of the subject properties were equal to the assigned values by the County Board. The Commission then confirmed the decision of the County Board regarding the values assigned to the subject properties. The taxpayer appeals.
The County asserts, as an initial matter, that the taxpayer's appeal is barred as a result of the taxpayer's failure to timely notice his appeal. North Carolina General Statutes § 105-345(a) (2003) provides:
No party to a proceeding before the Property Tax Commission may appeal from any final order or decision of the Commission unless within 30 days after the entry of such final order or decision the party aggrieved by such decision or order shall file with the Commission notice of appeal and exceptions which shall set forth specifically the ground or grounds on which the aggrieved party considers said decision or order to be unlawful, unjust, unreasonable or unwarranted, and including errors alleged to have been committed by the Commission.
Moreover, N.C. Gen.Stat. § 105-345.2(c) (2003) provides, in pertinent part, that an "[a]ppellant shall not be permitted to rely upon any grounds for relief on appeal which were not set forth specifically in his notice of appeal filed with the Commission."
A party's right to appeal an administrative agency's decision is limited to those situations where (1) a statute grants the right of appeal and (2) the party's appeal "conform[s] to the statutes granting the right of appeal and regulating the procedures." In re Appeal of General Tire, 102 N.C.App. 38, 40, 401 S.E.2d 391, 393-94 (1991). In the instant case, the Commission entered its final decision on 27 March 2003. A certified copy of the order was delivered to the taxpayer as required by N.C. Gen.Stat. § 105-290(b)(3) (2003), which, the taxpayer asserts, was received on 21 April 2003. The following day, the taxpayer filed a notice of appeal; however, that notice failed to set forth any grounds for appeal. Thereafter, the thirty-day period in which to file an effective notice of appeal expired on 28 April 2003. On 30 April 2003, the taxpayer filed a second notice of appeal attempting to "amend the Notice of Appeal *255 filed ... on 22 April 2003 to comply with the statute's requirement that the appellant" set forth the grounds for appeal.
The preceding facts make clear that taxpayer's first notice of appeal failed to comply with N.C. Gen.Stat. § 105-345(a) because it lacked any grounds on which the taxpayer asserted the Commission erred. The second notice of appeal likewise failed to comply with N.C. Gen.Stat. § 105-345(a) because it was filed outside of the thirty-day time period provided. Moreover, the taxpayer has cited no authority for the proposition that the second notice of appeal can "amend" or relate back to the first notice of appeal, and the relevant statutory provisions do not support it. Thus, while the taxpayer had a right to appeal, that right to appeal was lost by the taxpayer's failure to take timely action. Nevertheless, Rule 21 of the North Carolina Rules of Appellate Procedure provides, in pertinent part, that a "writ of certiorari may be issued ... to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action...." N.C. R.App. P. 21 (2004). We choose to consider the taxpayer's appeal as a petition for writ of certiorari pursuant to N.C. R.App. P. 21 (2004) in order to address the merits of the arguments.
North Carolina General Statutes § 105-345.2(b) provides as follows:
(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are: (1) In violation of constitutional provisions; or (2) In excess of statutory authority or jurisdiction of the Commission; or (3) Made upon unlawful proceedings; or (4) Affected by other errors of law; or (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or (6) Arbitrary or capricious.
Tax assessments are presumed correct, and the burden falls on the taxpayer to show the assessment was erroneous. In re Appeal of Bermuda Run Prop. Owners, 145 N.C.App. 672, 674-75, 551 S.E.2d 541, 543 (2001). To overcome this presumption of correctness of ad valorem tax assessments, a taxpayer may produce "competent, material and substantial" evidence showing (1) the county tax supervisor used an arbitrary method of valuation or an illegal method of valuation and (2) "`the assessment substantially exceeded the true value in money of the property[.]'" Id. (quoting In re Appeal of Camel City Laundry, 123 N.C.App. 210, 214, 472 S.E.2d 402, 404 (1996)).
The taxpayer does not assert the County's schedule of values is erroneous, nor does the taxpayer assert the values resulting from the appraisal of the subject properties were inconsistent with the County's appraisal of similar properties. The taxpayer does not contend that the assigned values improperly reflect the subject properties' true values. Indeed, it was admitted before the Commission that there were offers to purchase the subject properties in excess of the values assigned by the County for tax purposes. Since the taxpayer does not contest that the assessment reflects the true values in money of the subject properties, we hold the Commission followed the applicable statutory provisions in correctly determining their values for ad valorem taxation.
Nonetheless, the taxpayer asserts on appeal that "century-long de jure discrimination in educational, employment, housing and other necessities of life" caused the County's colorblind per se comparative method of assessing taxes to be racially discriminatory. The taxpayer seeks "some relief from this onerous, so-called `colorblind' method of valuing their property as if all other things were `equal'" under Article I, Section 19 of the North Carolina Constitution, which provides "nor shall any person be subject to discrimination by the State because of race, color, religion, or national origin." However, we note that by taxpayer's own admission, the taxes levied on the subject properties were uniformly determined by their fair market *256 values or true values in money and were not related in any way to the race or any other classification of the person responsible for paying the taxes.
"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."
Kresge Co. v. Davis, 277 N.C. 654, 662, 178 S.E.2d 382, 386 (1971) (quoting Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497, 503 (1944)). In the instant case, the taxpayer has failed to sufficiently demonstrate that N.C. Gen.Stat. § 105-317 was intentionally or purposefully administered in such a way as to discriminate against the taxpayer or others similarly situated.
Moreover, we note a holding that the current statutory scheme is unconstitutional based on the taxpayer's reasoning would require the legislature to give the taxpayer (and persons similarly situated) a lower tax liability on the subject properties than what would be proportional to their true values based upon racial considerations. While classifications regarding taxation made by the legislature can be reviewed by the courts of North Carolina and measured against constitutional strictures, see, e.g., In re Appeal of Chapel Hill Day Care Ctr., Inc., 144 N.C.App. 649, 658-60, 551 S.E.2d 172, 178-79 (2001), this Court is unaware of any case where the judiciary has been asked to force the legislature to make classifications such as that sought by the taxpayer. When asked to undertake such action, we find instructive our Supreme Court's statement that "[u]nder Article V of the Constitution of North Carolina, the power to levy taxes vests exclusively in the legislative branch of the government; and it is within the exclusive power of the General Assembly to provide the method and prescribe the procedure for discovery, listing and assessing property for taxation." DeLoatch v. Beamon, 252 N.C. 754, 757, 114 S.E.2d 711, 713 (1960). The policy considerations involved in measuring the propriety of taxation against past discrimination (and making classifications based upon such considerations) are best left to our legislature; thus, the taxpayer has sought relief in the wrong forum. We additionally note any classification of the kind sought by the taxpayer would have to pass constitutional muster. See Grutter v. Bollinger, 539 U.S. 306, 326, 123 S.Ct. 2325, 2337-38, 156 L.Ed.2d 304, 331 (2003) (citation omitted) (reiterating that, under the Equal Protection Clause of the federal Constitution, "all racial classifications imposed by government `must be analyzed by a reviewing court under strict scrutiny'"). We conclude the taxpayer's argument, that the North Carolina Constitution requires the legislature to forge a relationship between the amount of the taxes imposed and the race of the taxpayer upon whom they are imposed, to be without merit. This case is not suited to resolution by resort to a taxpayer's rights to equal protection, and constitutional provisions guaranteeing such rights are inapposite. The final decision of the Commission is affirmed.
Affirmed.
Judges TIMMONS-GOODSON and STEELMAN concur.

This total value reflects a downward adjustment made by the Orange County Board of Equalization and Review from the initial total value.