IN THE MATTER OF THE AD VALOREM VALUATION OF PROPERTY OF PINE RALEIGH CORPORATION FOR THE YEAR ENDED DECEMBER 31, 1961.

(Filed 11 January 1963.)

1. Taxation § 25—

The fact that a taxpayer does not seek reduction of the tax valuation placed on his property during the year in which the factors which he contends warrant the reduction occurred does not preclude him from seeking a reduction in the tax valuation in subsequent years. G.S. 105-279; G.S. 105-295.

**2. Same—**

Net income produced by property is one of the factors properly considered in determining its tax value, but the property's fair earning capacity must be considered instead of its actual rentals if the rentals are less than the property's fair earning capacity.

**3. Same—**

The fact that property is under a long-term lease does not justify the use of the constant rental therein provided as a factor in determining the tax value of the property when subsequent to the execution of the lease there is a devaluation in the value of the dollar so that the value of the property would be a great deal more if it were not subject to the lease.

**4. Same; Administrative Law § 4—**

Upon review of an order of the State Board of Assessment, the Superior Court is without authority to make findings at variance with the findings of the Board and, when the findings of the Board are supported by the evidence and it is apparent that the Board considered all of the evidence relating to the determinative factors, the Superior Court properly refuses to remand the cause.

Appeal by petitioner from *Phillips, J.,* September 1962 Civil Term of Wake.

As authorized by c. 716, S.L. 1955, as amended by c. 280, S.L. 1957, the commissioners of Wake County, in 1958 and 1959, appraised all real property situate therein. This appraisal was made to fix the value of each piece of property for tax purposes for 1960 and subsequent years.

Petitioner owns two pieces of property in Raleigh designated as (a) 228 Fayetteville Street appraised at $151,657, valued for tax purposes for 1960 at 35% ($53,080) of its appraised value; and (b) 230-32 Fayetteville Street, 229 South Salisbury Street, appraised at $365,235, likewise valued for tax purposes for 1960 at 35% ($127,832) of its appraised value. It held as lessee a third lot designated as 14 West Martin Street. This lot adjoins the lots on Fayetteville Street owned by petitioner in fee. The Martin Street lot is owned by "the Rogers family." Its 1960 appraised value was $167,919, and 35% tax value was $58,771. The lease to petitioner is for thirty years, beginning 1 September 1951, expiring 31 August 1981. For the first ten years of the term the rent is $10,000 per annum, for the second ten-year period, $10,500 per annum, and for the final ten-year period, $11,000 per annum. This lease does not appear in the record, but petitioner's brief indicates petitioner also is obligated to pay the taxes and insurance premiums on the building on this lot.

Petitioner, deeming the appraised values excessive, in 1961 filed with the County Board of Equalization and Review a request as permitted

by G.S. 105-327 (g) (2) for a reduction in the assessed and tax values of the three pieces of property.

The basis on which petitioner relied for a change in value was the fact that rent received pursuant to a lease of all these properties to a third party for a term beginning 1 January 1952, terminating 30 August 1981, did not justify the appraised value. This lease fixed the rent at 5½% of lessee's gross sales with a guaranteed minimum of $25,966 per annum. Petitioner received as rent for these properties for the years ending 30 June the following sums: 1953 — $44,196.09; 1954 — $39,200.69; 1955 — $29,558.07; 1956 — $32, 504.30; 1957 — $29,151.36; 1958 — $29,382.04; 1959 — $30,262.77; 1960 — $32,899.06.

County Board of Equalization and Review heard petitioner. It refused to reduce the appraised values. Petitioner, in apt time, appealed to the State Board of Assessment, as permitted by G.S. 105-275(3). State Board heard the evidence offered by petitioner to support its claim that its property had been excessively valued.

State Board, in May 1962, notified the chairman of the Board of County Commissioners of Wake County and counsel for petitioner that it "did carefully consider all pertinent facts and data in the above appeal. On the basis of the information submitted a decision was rendered by the Board which did,

"ORDER, that the appraised valuation of the above property as determined by Wake County be sustained."

Petitioner thereupon sought judicial review of the order of the State Board as permitted by G.S. 143-306 et seq. As the basis for review, it alleged that the State Board's decision was not supported by "competent, material and substantial evidence in view of the entire record, and is arbitrary and capricious." As the basis for this assertion, it said that the State Board of Assessment had not taken into consideration the fact that the properties were subject to a lease which would not terminate until 1981, and the rents received under that lease were not sufficient to support a finding that the property was fairly worth the sum or value at which it was appraised. It requested the court to reduce the values to $400,000 or for such other relief as the court was authorized to grant.

The court, reciting that petitioner at the hearing before the State Board had the opportunity to offer, and did in fact offer, evidence in detail with respect to the income of the properties, denied the relief sought. Petitioner excepted and appealed.

*Blanchard & Farmer* for petitioner appellant.
*Thomas A. Banks* for appellee.

RODMAN, J. Appellee urges an affirmance on two grounds: (1) Petitioner, not having applied to the State Board in 1960 when the property was appraised, could not seek a reduction in 1961 based on past income, a fact known in 1960; and (2) the appraised value was determined after due consideration of all facts bearing on that question.

Appellee moved before the State Board to dismiss petitioner's appeal on the theory that not having sought review in 1960, it was concluded and could not seek a review in 1961. State Board denied the motion to dismiss. It proceeded to hear evidence on which it could act in determining the value of the property. We are of the opinion and hold that the State Board acted correctly in refusing to dismiss the appeal from the County Board for the reasons urged. Once real estate has been appraised for taxation, it continues to be listed at that figure until reappraised, unless some good reason warrants a change in value. Some specific conditions justifying a change in value are enumerated in G.S. 105-279. When that section is read and considered, as it must be, with G.S. 105-295, it is, we think, apparent that the Legislature intended to authorize County Board of Equalization and Review, when requested so to do, to correct any unjust and inequitable assessment. If it refuses to act, the taxpayer may appeal to the State Board of Assessment. The Legislature never contemplated that an injustice done a taxpayer must continue for a period of years merely because he failed at the first opportunity to bring the injustice to the attention of the authority having the power to correct.

Holding, as we do, that petitioner was entitled to the hearing accorded it, we must examine the record to see if, as it asserts, the hearing was a pure formality, and the conclusion arbitrary and capricious because not supported by substantial evidence. If petitioner's assertion is correct, the trial court should have allowed its motion to remand to the State Board with directions to comply with the statute, G.S. 105-295, and consider income as one of the elements of value. If, on the other hand, the State Board, as its order states, did in fact consider all the pertinent evidence, then the court correctly refused to grant petitioner the relief sought.

Petitioner, to establish its claim of overvaluation, called as an adverse witness the president of Southern Appraisal Company, employed by Wake County to determine the fair values of all properties in the county for use in levying ad valorem taxes. This witness approved the values assigned to each of petitioner's pieces of property. He listed the factors used to fix the value. He listed replacement costs less depreciation, values assigned to similar properties in the neighborhood, and then said: "The rental or the fair rental income that could be realized in each of the properties was another factor which was

taken into consideration." When the value was assigned to these properties, the witness did not know the actual rental income which petitioner was receiving. He had asked for that information, but it had not been supplied. He said: "Capitalization was taken into consideration in this particular only on a comparable basis with other property in the vicinity." Most of the properties in the block in which petitioner's property is situate is owner occupied, but, according to the witness, two pieces in the block were rented and the rents produced by those properties were taken into consideration in determining values. As a result of the appraisal, the properties were actually assessed for taxation in 1960 at a lower value than in 1959.

Petitioner had a real estate broker, an expert real estate appraiser, value the properties. He fixed the fair value of the property at $400,000. He expressed the opinion that real property ought to yield 7%. Using the rent received by petitioner for the year ending 30 June 1960 of $32,892, he deducted taxes, insurance, and the $10,000 rent paid to the owner of the property on Martin Street, and arrived at a net income of $13,420. This, when capitalized at 7%, gave a value of $191,736 for all three tracts. He recognized this was not the fair value. He said: "This would not be the fair market value of the property. That is what. . .if you were selling it on income alone. . .that would be the value, but somewhere between the physical value and the income approach you have a value. Now with every merchant it is not the same and therefore, that is where the matter of judgment comes in, as to whether the property produces what it should. Some are producing far in excess of the physical value and some less, but this is a percentage lease." He further said: "I used the following factors in arriving at the fair market value of this property; the physical value which includes land and buildings, the existing contracts on the property, the income from the existing contracts at the time. The income from this property has dropped from $44,000.00, approximately in 1953 to $30,000.00 in 1961."

In addition to the parol testimony, the State Board had the benefit of statements by petitioner showing the purchase price for each of these lots. Petitioner, who purchased in 1928 and 1939, paid $355,500 for the properties on Fayetteville Street. Its lessor purchased the Martin Street property in 1952 for $100,000. It is a matter of common knowledge that the value of the dollar has depreciated during the past several years, resulting in a higher price for commodities, including real estate.

Without regard to petitioner's duty, if any, to pay taxes or insurance premiums on the building on Martin Street, that property has a value of $150,000 when capitalized at 7% on the rent currently paid by

petitioner. If, instead of using 7% as a fair rate of return, it should be found that 6 ¼% was a fair rate of return, the value assignable to this property under the capitalization theory would be $168,000— slightly more than the value actually placed on it of $167,919. The amount paid for the Martin Street property represents approximately 22% of the total purchase money paid for all three lots. Apply that percentage to the total value which petitioner insists should be assigned to the three properties, and it would be valued at $88,000. Using that value and the rent paid by petitioner, the rate of return to the Rogers estate would exceed 11½%. This is 50% higher than the rate petitioner's witness says is a fair rate to capitalize rents.

Ordinarily it is the duty of the property owner to list his property for taxation. This includes, when the property is real estate, the buildings and permanent fixtures, although they may be owned separately. *Investment Co. v. Cumberland County*, 245 N.C. 492, 96 S.E. 2d 341. If the Martin Street property were listed to its owner, it would, using income as the sole factor in determining its value, be listed at $150,000 to $170,000. The value assessed by the county was $167,919. But petitioner says: It has obligated itself to list and pay taxes thereon; it exercised bad judgment and made a lease which does not expire for nearly twenty years; and because of its bad business judgment, the value of this property should be cut in half, and Wake County should lose its taxes. Applying this reasoning to the man who owns property, borrows money mortgaging the property as security, and investing the funds obtained in securities which become worthless, he ought to be taxed only on the value of his equity of redemption. The statute, G.S. 105-295, in fixing the guide which assessors must use in valuing property for taxes, includes as a factor "the past income therefrom, its probable future income." But the income referred to is not necessarily actual income. The language is sufficient to include the income which could be obtained by the proper and efficient use of the property. To hold otherwise would be to penalize the competent and diligent and to reward the incompetent or indolent.

Net income produced is an element which may properly be considered in determining value, but it is only one element. If it appears that the income actually received is less than the fair earning capacity of the property, the earning capacity should be substituted as a factor rather than the actual earnings. The fact-finding board can properly consider both.

The case of *Donovan v. City of Haverhill*, 141 N.E. 564, 30 A.L.R. 358, bears remarkable similarity to the facts of this case. There the owners of the property were challenging the valuation placed on the properties for taxation for the year 1921. They insisted the value was

entirely too high because of leases having a long time to run. These leases were made several years prior to 1921 and when the leases were made, the rents reserved were fair, but when the properties were assessed in 1921, the properties could have been rented for several thousand dollars in excess of the rent paid. The conclusion reached by the Supreme Court of Massachusetts is epitomized in the headnote reading: "The fact that long-term leases carry rent which reduce the market value of the property below what it would be in their absence does not prevent the assessment of the property for taxation at its full value, as compared with other property in the neighborhood, or what it would be if free from the leases." In *Richmond F & P R Co. v. Commonwealth,* 124 S.E. 2d 206, the Supreme Court of Appeals of Virginia was called upon to determine whether assessors could consider rental which property would currently yield or was bound by a rental fixed in 1905 extending to 2001. The court said: "Under the terms of these contracts appellant receives an annual return of $12,500 from the real estate, and it is contended that the Commission's assessor should have reduced his valuation because of the limited return which the railroad receives. This is without merit." Justice Ronan, speaking for the Supreme Judicial Court of Massachusetts, said in *Old Colony R. Co. v. Assessors of Boston,* 35 N.E. 2d 246 (251): "Taxation is a practical matter, and mathematical uniformity in the distribution of the public burden arising from governmental expenses is an impossible attainment. The difference in income derived by the owners from different parcels of realty of substantially the same market value might be due to imprudent management, irresponsible tenants or disadvantageous leases. The tax to the owner receiving the smaller income is undoubtedly a heavier burden than it is to a neighbor who obtains a greater income. Such inequality arises from business and economic conditions. It cannot be attributed to the taxing statute." Similar statements are found in *Slatersville Finishing Co. v. Greene,* 101 A 226; *Assessors of Quincy v. Boston Consolidated Gas Co.,* 34 N.E. 2d 623; *People v. Boyland,* 121 N.Y.S. 2d 238; *Somers v. Meriden,* 174 A 184, 95 A.L.R. 434; 84 C.J.S. 797-8.

The fact-finding body had before it all of the evidence necessary to fix the value. It had petitioner's statement of the amounts paid for the properties when purchased, the rent which petitioner was paying for a part of the properties, the rent which it was receiving from its lessee. The record does not disclose the relationship, if any, between petitioner and its lessee. The record gives no indication as to why total sales had decreased so substantially in a seven-year period. Was it due to the management of lessee, or some other cause?

Petitioner sought review in the Superior Court on the record made before the State Board. That court was without authority to make find-

ings at variance with the findings of the State Board, supported as the findings were by material and substantial evidence. G.S. 143-315. That was the exclusive function of the State Board of Assessment. It says it considered all the evidence. Necessarily that includes the single element of rents currently received which petitioner relies on exclusively to justify its claim for a reduction in value. Having considered this evidence, there was no reason why the Superior Court should remand the cause to the State Board of Assessment to further consider petitioner's claims or to hear further evidence which at best could only corroborate petitioner's witness.

Affirmed.