IN THE MATTER OF: APPEAL OF: OCEAN ISLE PALMS LLC FROM THE DECISION OF THE BRUNSWICK COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALUATION AND TAXATION OF REAL PROPERTY FOR TAX YEAR 2010

No. COA11-1127

(Filed 21 February 2012)

## 1. Taxation—property assessments—negotiated reduction on prior assessment—not a waiver of current appeal

The Property Tax Commission did not err by granting summary judgment in favor of Ocean Isle on its 2010 appeal from tax assessments based on Ocean Isle negotiating reductions in its 2008 tax assessments and choice not to appeal from those assessments. The adjustments were better characterized as unilateral actions by the County based on the information provided by Ocean Isle rather than a negotiation between the parties.

## 2. Taxation—property assessments—carry forward provision—wrongful tax valuations

The Property Tax Commission did not err by failing to find and conclude that the 2010 tax assessments were correctly carried forward from 2009 as required by N.C.G.S. § 105-286. Nothing in the statute or our case law suggested that the carry forward provision was intended to immunize wrongful tax valuations from appeal or to convert them from wrongful to correct.

## 3. Taxation—property assessments—Schedule of Values—summary judgment improper

The Property Tax Commission erred by granting summary judgment in favor of Ocean Isle on its 2010 appeal from tax assessments because there were genuine issues of material fact as to whether the County's 2007 Schedule of Values was misapplied for the condition factor to undeveloped lots that had been sold. A county's schedules, rules, and standards for tax revaluations must be applied in a uniform and equitable manner that determines the true value of property.

Judge BEASLEY concurring in part and dissenting in part.

Appeal by Brunswick County from order entered 24 June 2011 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 26 January 2012.

*Nelson Mullins Riley & Scarborough LLP, by Charles H. Mercer, Jr., and Reed J. Hollander, and The Coastal Companies, by Elaine R. Jordan, for Taxpayer Ocean Isle Palms LLC.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker, Jamie Schwedler, and Brenton W. McConkey, and Jana Berg, Esq., for Brunswick County.*

STEPHENS, Judge.

*Factual Background and Procedural History*

This appeal arises from a dispute over adjustments to the 2007 tax revaluations of certain residential lots in Brunswick County ("the County"). For many years, the County has used the sales prices of comparable residential lots to set tax value base rates. Prior to 2005, few residential lots in the County were sold without infrastructure such as roads and water and sewer lines in place. Because so few lots were sold without infrastructure (which would presumably have lower values than more developed lots), the County developed the practice of discounting the tax value of such undeveloped lots. If a lot lacked any infrastructure, its value was generally assessed at 20% of that of an otherwise comparable developed lot. As infrastructure was added over time, the value would be stepped up to 40%, 60%, or 80% of sales values, depending on the degree of infrastructure completion. These discounting rates were reflected on tax record cards as a "condition factor" expressed in decimal form.

In 2005 and 2006, sales practices began to change in the County, with more developers selling residential lots without infrastructure. On 6 May 2006, Taxpayer Ocean Isle Palms, LLC ("Ocean Isle") began selling lots in a large residential subdivision of approximately 400 lots divided into several phases. Between 6 May 2006 and 1 January 2007, Ocean Isle sold 180 lots in the subdivision at an average lot price of about $275,000, despite the lack of basic infrastructure in the subdivision.

As required by statute, the County conducted a general reappraisal in 2007. For this reappraisal, the County adopted a Schedule

**IN RE OCEAN ISLE PALMS, LLC**

[219 N.C. App. 81 (2012)]

of Values which employed the same sales comparison method as in previous years, including the application of condition factors. As in past years, the 2007 Schedule of Values does not explicitly explain or limit how the "condition factor" may be determined. In 2007, Ocean Isle lots were valued using the Schedule of Values, including the application of the condition factor, resulting in assessed values of $55,000 per lot (20% of their $275,000 average sales price).

In late 2007 or early 2008, the County's tax assessor ordered his staff to stop using the condition factor to discount the value of undeveloped lots. At the assessor's direction, the valuations of Ocean Isle's undeveloped lots were recalculated in 2008 to remove the condition factor, resulting in a change of tax value from $55,000 in 2007 to $275,000 in 2008.

Upon seeing the new valuations, Ocean Isle contacted the assessor's office and presented information about two items it contended should reduce the tax value of the lots. The sales prices of lots in the subdivision had included two years of prepaid bank interest paid from loan proceeds that Ocean Isle did not receive and $500 in attorney fees paid by Ocean Isle. In addition, Ocean Isle produced evidence that some of the lots contained wetlands or were otherwise not fully developable. Based on this information, the County reduced the 2008 assessments for Ocean Isle's lots by about 15% to $233,375 per lot. Undevelopable lots received further adjustments in valuation.

These values were carried forward in 2009 and 2010. Ocean Isle did not appeal from the adjusted revaluations in 2008 or 2009. However, Ocean Isle appealed the 2010 valuations to the County's Board of Equalization and Review ("the Board"), which heard testimony and received evidence on 22 June 2010. The Board declined to change the valuation of Ocean Isle's lots. On 26 July 2010, Ocean Isle timely appealed to the North Carolina Property Tax Commission ("the Commission") from the Board's decision. Before the Board and the Commission, Ocean Isle contended that the 2010 values were improper because the 2008 adjustments to the 2007 general revaluations had not been made for a statutorily-permitted reason. On 18 March 2011, Ocean Isle moved for summary judgment before the Commission. On 21 April 2011, the County moved for summary judgment. Following a 26 May 2011 hearing, the Commission, sitting as the State Board of Equalization and Review, entered an order granting Ocean Isle's motion for summary judgment. The order concluded that the 2008 adjustments had been unlawful and directed the County

**IN RE OCEAN ISLE PALMS, LLC**

[219 N.C. App. 81 (2012)]

to use the 2007 revaluations for the 2010 tax year. The County appeals.

## Discussion

On appeal, the County argues that the Commission erred (1) in granting summary judgment in favor of Ocean Isle because Ocean Isle negotiated reductions in its 2008 assessments and then chose not to appeal from those assessments, barring it from raising issues related to those assessments in its 2010 appeal and (2) in failing to find and conclude that the 2010 assessments were correctly carried forward from 2009 as required by statute. In the alternative, the County argues that summary judgment was improper because there were genuine issues of material fact as to whether the County's Schedule of Values was misapplied in 2007 and 2008. For the reasons discussed herein, we reverse and remand.

## Standard of Review

North Carolina General Statute section 105-345.2

> governs the extent of review for appeals from the Property Tax Commission . . . . Subsection (a) provides that the appellate court shall review the record and exception and assignments of error in accordance with the Rules of Appellate Procedure. Subsection (b) provides that the appellate court shall (1) decide all relevant questions of law, (2) interpret constitutional and statutory provisions, and (3) determine the meaning and applicability of the terms of any Commission action.

*In re McElwee*, 304 N.C. 68, 73-74, 283 S.E.2d 115, 119 (1981). We review questions of law *de novo* and the sufficiency of the evidence to support the Commission's decision under the whole-record test. *In re The Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003).

Here, the County appeals from the Commission's order granting summary judgment in favor of Ocean Isle. Rule 56(c) of the North Carolina Rules of Civil Procedure provides that

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. Furthermore, when considering a summary judgment motion, all inferences of fact . . . must

be drawn against the movant and in favor of the party opposing the motion.

*Craig v. New Hanover Cty Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353 (2009) (citations and quotation marks omitted). However, "[t]he North Carolina Rules of Civil Procedure do not apply to proceedings before the Commission[,]" 17 N.C.A.C. 11.0209, and our review reveals no statutory or case law authority specifically permitting the Commission to rule on summary judgment. Nevertheless, this Court has recognized that

> [t]he duties of the Commission are quasi-judicial in nature and require the exercise of judgment and discretion. The Commission has the authority and responsibility to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.

*In re Philip Morris U.S.A.*, 130 N.C. App. 529, 532, 503 S.E.2d 679, 681 (citations and quotation marks omitted), *cert. denied*, 349 N.C. 359, 525 S.E.2d 456 (1998). In addition, we note that this Court has held in a pair of unpublished cases that the Commission does have such authority. *See In re Brooks*, ___ N.C. App. ___, 716 S.E.2d 441, 2011 N.C. App. LEXIS 2228 (2011); *In re Richard*, 184 N.C. App. 187, 645 S.E.2d 899, 2007 N.C. App. LEXIS 1335 (2007). The County's appeal raises questions of law, to wit, issues of statutory interpretation and the propriety of summary judgment where there exist alleged issues of material fact. Therefore, we review the Commission's summary judgment order *de novo*.

### Propriety of the 2008 Adjustments

[1] The County first argues that the Commission erred in granting summary judgment in favor of Ocean Isle because Ocean Isle negotiated reductions in its 2008 assessments and then chose not to appeal from those assessments, barring it from raising issues related to those assessments in its 2010 appeal. We disagree.

"Subchapter II of chapter 105 of our General Statutes, the 'Machinery Act' [], provides the statutory parameters for the listing and appraisal of property and the assessment and collection of property taxes by counties and municipalities." *In re Allred*, 351 N.C. 1, 4, 519 S.E.2d 52, 54 (1999). Counties of our State must conduct countywide revaluations of real property every eight years or sooner,

IN RE OCEAN ISLE PALMS, LLC

[219 N.C. App. 81 (2012)]

depending on the county. N.C. Gen. Stat. § 105-286(a) (2011).[1] In the years following a scheduled revaluation, counties are required to carry forward the revaluations unchanged, unless there exists a lawful basis for change pursuant to N.C. Gen. Stat. § 105-287(a) (2011).[2] Taxpayers may seek review of valuations through their county boards of equalization and review. *See* N.C. Gen. Stat. § 105-322(g)(2) (2011) ("On request, the board of equalization and review shall hear any taxpayer who owns or controls property taxable in the county with respect to the listing or appraisal of the taxpayer's property or the property of others."). Taxpayers can appeal the decisions of their county boards of equalization and review to the North Carolina Property Tax Commission, so long as they comply with the relevant time limitations and other requirements:

> General Statute section 105-290 sets out the time limit for appeals from a board of equalization and review to the Property Tax Commission: Time Limits for Appeals.—A notice of appeal . . . from a board of equalization and review shall be filed with the Property Tax Commission within 30 days after the date the board mailed a notice of its decision to the property owner. To perfect an appeal from the county board, an appellant must file a written notice of appeal with the clerk of the board of county commissioners and with the Property Tax Commission within 30 days after the county board has mailed notice of its decision pursuant to G.S. 105-322(g)(2)d.

*In re La. Pac. Corp.*, ___ N.C. App. ___, ___, 703 S.E.2d 190, 193 (2010) (internal citations and quotation marks omitted).

We begin by noting that no evidence in the record indicates that Ocean Isle "negotiated" the reductions made to the 2008 valuations. Instead, the record reveals that Ocean Isle attended an "informal conference" at the assessor's office in 2008 and was told that values would only be adjusted on lots if the assessor had incorrect sales price information. As a result, Ocean Isle provided information about the prepaid bank interest and attorney fees included in the sales prices, as well as about the undevelopable wetland lots. Based on that information, the County made adjustments. These adjustments are

---

1. The County conducted general reappraisals in 2007 and 2011.

2. At the time the assessment challenged by Ocean Isle became effective on 1 January 2008, the applicable statute was section 105-286(c). This section was repealed effective 1 July 2009 and replaced by section 105-287(a). This repeal and replacement shifted the effective language of section 105-286(c) to section 105-287(a), but made no substantive change to the relevant case law discussed herein.

better characterized as unilateral action by the County based on the information provided by Ocean Isle rather than a "negotiation" between the parties. In any event, we conclude that Ocean Isle's provision of this information had no effect on its right to appeal the 2010 tax values.

We also reject the County's contention that Ocean Isle's failure to appeal from the 2008 adjustments in that year or in 2009 somehow bars it from bringing an appeal to the valuations carried forward for tax year 2010. There is no dispute that Ocean Isle timely appealed the 2010 tax values to the Board or that it timely appealed the Board's decision to the Commission. Further, Ocean Isle is not challenging its valuations from 2008 and 2009 or seeking a refund of the taxes paid based on those valuations. Instead, it timely challenges the 2010 assessments in the manner and within the time provided by statute. The County cites no case or statute, and we have likewise found none, which prevents a taxpayer from challenging a current year assessment on the basis of an erroneous or unlawful act which allegedly occurred in a prior tax year.

While, as noted by both parties, the case involved a different procedural posture and predates the enactment of the Machinery Act in 1971, we find the following language from *In re Pine Raleigh Corp.* both instructive and persuasive:

> Appellee moved before the State Board to dismiss petitioner's appeal on the theory that not having sought review in 1960 [when the tax appraisal took place], it was concluded and could not seek a review in 1961. State Board denied the motion to dismiss. It proceeded to hear evidence on which it could act in determining the value of the property. We are of the opinion and hold that the State Board acted correctly in refusing to dismiss the appeal from the County Board for the reasons urged. Once real estate has been appraised for taxation, it continues to be listed at that figure until reappraised, unless some good reason warrants a change in value. Some specific conditions justifying a change in value are enumerated in G.S. 105-279. When that section is read and considered, as it must be, with G.S. 105-295, it is, we think, apparent that the Legislature intended to authorize County Board of Equalization and Review, when requested so to do, to correct any unjust and inequitable assessment. If it refuses to act, the taxpayer may appeal to the State Board of Assessment. *The Legislature never contemplated that an injustice done a taxpayer must*

*continue for a period of years merely because he failed at the first opportunity to bring the injustice to the attention of the authority having the power to correct.*

258 N.C. 398, 401, 128 S.E.2d 855, 857 (1963) (emphasis added). Thus, in *In re Pine Raleigh Corp.*, as here, the taxpayer did not appeal the valuation in the year when it took place, but rather waited until that value had been carried forward to a subsequent tax year. *Id.* In response, the county board of equalization and review asserted that the taxpayer was barred from challenging the tax value that had been carried forward. *Id.* (summarizing the board's argument as the taxpayer "not having applied to the State Board in 1960 when the property was appraised, could not seek a reduction in 1961 based on past income, a fact known in 1960[.]"). Although not binding, we agree with the reasoning of the Supreme Court and its assessment of the General Assembly's intent in providing for appeal to the State Board of Assessment, whose role is now occupied by the Property Tax Commission, of erroneous valuations even during non-revaluation years. Accordingly, we hold that Ocean Isle was entitled to raise issues relating back to the 2008 adjustments to the 2007 revaluations in support of its timely challenge to the 2010 assessments.

The flavor of the County's arguments is that Ocean Isle has "gotten away with something" by sitting on its rights to the detriment of the County. We note that Ocean Isle quite literally paid for its decision not to immediately challenge the 2008 assessments as adjusted, having paid taxes in 2008 and 2009 based on assessments which the Commission has now held were erroneous. The fact that sections 105-290 and 105-322 limit challenges to the current tax year will continue to serve as powerful encouragement for taxpayers to challenge any allegedly improper assessments as soon as possible. Further, as noted by Ocean Isle, the County's interpretation of the statutes would work a severe hardship on taxpayers who purchase property during non-revaluation years. A new property owner who discovered an error in the previous revaluation would have no opportunity to challenge it and would be saddled with the injustice until the next revaluation. We reject the County's interpretation.

[2] The County's second argument is that the Commission erred in failing to find and conclude that the 2010 assessments were correctly carried forward from 2009 as required by statute. However, the Commission's findings of fact 16 and 17 state that the County adjusted the 2007 revaluations in 2008 and then carried the 2008

adjusted values forward in 2009 and 2010. In addition, conclusion of law 1 quotes the "carry-forward" requirement of section 105-286(c).

Rather than a failure by the Commission to make certain findings and conclusions on this point, the County's true contention appears to be that, having been carried forward in accord with section 105-286, the improper valuations from 2008 are now proper and thus immune from challenge. We cannot agree. To adopt the County's argument would limit taxpayers' right to challenge revaluations to the year immediately following a revaluation because any wrongful revaluation carried forward would be transformed from unlawful to lawful. Nothing in section 105-287 or in our case law suggests that the carry forward provision is intended to immunize wrongful tax valuations from appeal or to convert them from wrongful to correct. As noted *supra*, the result would be that "an injustice done a taxpayer [would] continue for a period of years merely because [the taxpayer] failed at the first opportunity to bring the injustice to the attention of the authority having the power to correct." *Id.* at 401, 128 S.E.2d at 857. The County's argument is overruled.

### *Propriety of Summary Judgment*

**[3]** In the alternative, the County argues that summary judgment was improper because there were genuine issues of material fact as to whether the County's 2007 Schedule of Values was misapplied. We agree.

In non-revaluation years (such as 2008 for the County), adjustments to valuations can be made only for one of the six reasons specified in section 105-287(a). Here, the County asserted that its 2008 adjustments to Ocean Isle's valuations were to "[c]orrect an appraisal error resulting from a misapplication of the schedules, standards, and rules used in the county's most recent general reappraisal[.]" N.C. Gen. Stat. § 105-287(a)(2).

There is no dispute that, in all respects pertinent to this appeal, the 2007 Schedule of Values is no different from earlier schedules of values used by the County in previous general reappraisals. The 2007 Schedule of Values still permitted appraisers to use the condition factor to discount the tax value of lots and to use their experience and expertise to determine the true value of lots. What did change in 2007 was the nature of the comparison sales to which the condition factor was applied—before 2007, the comparison sales were largely of developed lots, while during the 2007 reappraisal, the comparison sales were of undeveloped lots. According to the County,

the appraiser erred in applying the "condition factor" to Ocean Isle's undeveloped lots in 2007 because the resulting tax values were not the true values of the lots. *See* N.C. Gen. Stat. § 105-283 (2011) ("All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value . . . .").[3]

Our case law provides little explicit guidance in determining what constitutes "an appraisal error resulting from a misapplication of the schedules, standards, and rules[.]" N.C. Gen. Stat. § 105-287(a)(2). However, our General Statutes are clear that property tax appraisals should reflect the property's true value. *See* N.C. Gen. Stat. § 105-283; *see also In re Bosley,* 29 N.C. App. 468, 471-72, 224 S.E.2d 686, 688, *disc. review denied,* 290 N.C. 551, 226 S.E.2d 509 (1976) (noting that the purpose of section 105-283 is to "provide that all property shall be appraised at market value, and that all the various factors which enter into the market value of property are to be considered by the assessors in determining this market value for tax purposes"). The requirement that real property be appraised at its true value is "to assure, as far as practicable, a distribution of the burden of taxation in proportion to the true values of the respective taxpayers' property holdings . . . ." *In re King,* 281 N.C. 533, 539, 189 S.E.2d 158, 161 (1972). This

> [e]quality of appraisal, with resulting equity in taxation, is fundamental in the Machinery Act. There may be reasonable variations from market value in appraisals of property for tax purposes if these variations are uniform. A uniform and dependable method of property appraisal which gives effect to the various factors that influence the market value of property and results in equitable taxation does not violate the appraisal provisions of the Machinery Act.

*In re Bosley,* 29 N.C. App. at 472, 224 S.E.2d at 688. The County's 2007 Schedule of Values echoed these principles in stating that the ultimate goal of its guidelines was to "ensure the uniform, consistent, accurate and efficient valuation" of property. We believe this language, along with that of the Machinery Act and case law quoted *supra,* must provide the context for all of the specific guidelines and rules in the 2007 Schedule of Values.

---

3. The County's 2007 Schedule of Values quotes the language of section 105-283 as the basis for the County's appraisal standards.

**IN RE OCEAN ISLE PALMS, LLC**

[219 N.C. App. 81 (2012)]

Thus, while we agree with Ocean Isle that the 2007 Schedule of Values provided no specific guidance about how the condition factor was to be applied, leaving that determination in the discretion of the appraiser, that discretion was not unbounded. Rather, the appraiser was required to use his experience and expertise to apply the condition factor in a way that "ensure[d] the uniform, consistent, accurate and efficient valuation" of property. If an appraiser instead applies a Schedule of Values in a manner which results in uneven, inconsistent, and inaccurate tax values, we hold that the appraiser has misapplied the schedule, causing an appraisal error which can, in turn, be corrected as provided for in section 105-287(a)(2).

In light of this holding, we believe the Commission erred in granting summary judgment because there were disputed issues of fact about whether the application of the condition factor in 2007 to undeveloped lots that had been sold resulted in uniform, consistent, and accurate assessments of the lots' true values. The parties presented conflicting evidence about whether the Ocean Isle lots were appraised at their true value in 2007. The county's appraiser stated that application of the condition factor resulted in accurate determinations of the lots' true values at $55,000, but the County presented the affidavit of a licensed appraiser placing the true values between $255,000 and $295,000. The Commission made no finding of fact about the true value of Ocean Isle's lots. While we recognize that "[t]here may be reasonable variations from market value in appraisals of property for tax purposes[,]" those variations must be "uniform." *In re Bosley*, 29 N.C. App. at 472, 224 S.E.2d at 688. Here, the County presented evidence that application of the condition factor to undeveloped lots in 2007 varied between appraisers and subdivisions, suggesting an uneven and inconsistent, rather than uniform, valuation of property. Such a result would prevent the "distribution of the burden of taxation in proportion to the true values" of taxpayer's property. *In re King*, 281 N.C. at 539, 189 S.E.2d at 161. Following a hearing, the Commission shall make the findings of fact necessary to resolve these disputed facts and such conclusions of law as result therefrom.

To be clear, we see nothing erroneous about the inclusion of the condition factor in the County's 2007 Schedule of Values nor in its grant of discretion to appraisers to use their experience and expertise to determine the true value of properties. We also emphasize that mere differences of opinion among appraisers about the exact true value of property are to be expected and *do not* constitute a misapplication of a county's schedule of values. However, the use of proce-

dures permitted by a schedule of values in a manner which results in lots being valued far below or far above their true values and in a manner inconsistent with the valuation of other lots in the same county *is* a misapplication of the schedule. Simply put, a county's schedules, rules, and standards for tax revaluations must be applied in a uniform and equitable manner that determines the true value of property.

Accordingly, we reverse the Commission's order and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judge STROUD concurs.

Judge BEASLEY concurs in part and dissents in part.

BEASLEY, Judge, concurring in part and dissenting in part.

While I agree with the majority's resolution of the first two issues, I write separately because I would also affirm the Commission's grant of summary judgment to Ocean Isle. Therefore, I respectfully dissent.

I do not believe there are any genuine issues of material fact regarding whether the County's 2007 Schedule of Values was misapplied. The record is clear that the County used the "condition factor" method of appraisal for decades prior to this action, and that the decision of whether to apply a factor, and if so what factor, has always been in the sound discretion of the County's appraiser. The County appraiser applied this method in 2007 to value the Ocean Isle lots at prices ranging from $45,000 to $60,000 per parcel. The County then proffered an affidavit of another licensed appraiser, Ray Real, who contended that the lots are in fact worth around $200,000 more each. Real essentially asserted that the lots are worth between $255-295,000 before the condition factor was applied. Thus, the parties are not actually arguing about whether this was a *misapplication* of the County's Schedule of Values. Rather, they disagree as to whether the use of a condition factor was proper going forward.

The County did not dispute that the condition factor method had been employed for decades, so to argue now that it was a "misapplication" of its Schedule of Values is unavailing. Instead, the County is actually arguing for a new standard appraisal practice to be imple-

mented. Because that is not a circumstance covered by N.C. Gen. Stat. § 105-287(a)(2) (2011), the Commission properly found that Ocean Isle was entitled to judgment as a matter of law and I would affirm that finding.